THOMAS O. BULLOCK, PLAINTIFF IN ERROR, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, DEFENDANT IN ERROR.

1. If there be no evidence to justify the assessment of exemplary damages against a defendant, the trial court may so instruct the jury.
2. Proof of asperities in colloquy between the conductor of a railway train and a passenger who resists the enforcement in good faith of a rule of the railway company, which asperities were induced by the behavior and language of the passenger, is not sufficient to justify the assessment of exemplary damages against the railway company.

[*Argued March 8th,* 1898 ; *decided June 20th,* 1898.]

On error to the Supreme Court.

On the 28th of January, 1896, the plaintiff in error entered a train of cars of the defendant, at its depot in Hoboken, with intent to travel in it to Mount Arlington, in Morris county. He was provided with a " commutation ticket," which stated that it entitled T. O. Bullock to sixty rides on continuous trains between Mount Arlington and Hoboken during the month of January, subject to the conditions on its back, to be signed by Bullock. Those conditions were in form of an agreement, in consideration of reduced fare, that Bullock would conform to all rules and regulations of the company, and agree to specified conditions, among which was this, that he should be entitled to personal passage only. He took with him into the car two packages containing fourteen pounds of oatmeal, a pound and a half of bacon, two pounds of coffee and six candles. As he entered one of the cars, a brakeman in the employ of the defendant informed him that he could not take the packages in the passenger car with him. The plaintiff smiled and passed into the car and took a seat, placing one package on the floor between his feet, and the other on the seat beside him. The latter he covered with his overcoat. The brakeman followed him into the car and explained

that the packages could not be carried there, and the plaintiff answered, "I heard that before." Evidently the brakeman then told the conductor of the train that the plaintiff had taken the bundles with him on the car, for, a few moments after the plaintiff was seated, the conductor entered the car, and, not seeing the concealed packages, audibly asked the brakeman, "Where is he? Show him to me," and upon the plaintiff being pointed out, addressed him, saying, "You will have to take those packages in the express car," to which the plaintiff responded, "Not to-day." Then followed a colloquy between the conductor and the plaintiff, in a somewhat irritating strain upon both sides. Finally a detective and peace officer, commissioned by the governor of the state, but in the employment of the defendant in error, was called, and he, after contending with some resistance upon the part of the plaintiff, in which, it is claimed, the plaintiff's coat was torn, took the packages from him, out of the passenger car to the express car. Later, the plaintiff told the conductor that he would leave the train at Dover, a station short of his journey, and that he would like to have his packages, and was told that they would be found at Dover, in the express office there. After two or three weeks, the plaintiff called at the express office, and, upon paying the express charge for his packages, under protest, received them in damaged condition, mainly due to his delay in their redemption.

At the trial at the Morris Circuit, before Honorable William J. Magie, Chief Justice, and a jury, the jury was charged that the plaintiff's ticket constituted his contract of passage; that the conditions that he should be entitled to personal passage only restricted him from carrying anything but personal baggage, limited to articles of personal property that were reasonably appropriate for the purpose of the journey; that the oatmeal, bacon, coffee and candles contained in the packages could not be carried by the plaintiff under his contract; that the defendant had no right to take the plaintiff's packages from him, but should either have prevented his entry into the car with them, or should have removed him from the car if

he persisted in having the packages with him there, and that upon the evidence in the case there was no indication of that malice in connection with the transaction that would justify other damages than those which would compensate the plaintiff for the loss of the value of the packages and the diminution of the value of the plaintiff's coat, if the jury should determine that it had been torn.

The verdict was for the plaintiff, in accordance with the charge.

For the plaintiff in error, *John Linn.*

For the defendant in error, *Flavel McGee.*

The opinion of the court was delivered by

THE CHANCELLOR.    The plaintiff in error questions the correctness of the charge of the trial judge, both because of its declarations as to his rights under his contract for passage, and because of its instruction to the jury that exemplary damages could not be awarded.

It is unnecessary to deal with the first class of objections. Through the determination of the trial court that the defendant wrongly proceeded in taking the packages from the plaintiff, recovery was permitted which is fully compensatory of all injury suffered by the plaintiff, whatever his rights may have been.    If the court was in error upon the questions as to his rights, that error has not affected the amount of verdict in his favor.

Right in the plaintiff to have punitive or exemplary damages must spring from the fact that the injury he suffered was inflicted in spirit of malice, within which may be embraced both a deliberate purpose to override his rights and insult his self-respect or dignity and a wanton disregard of his self-respect and dignity.    The evidence discloses that the agents of the defendant acted upon instructions which contemplated the enforcement of that which was in good faith believed by the managers of the defendant to be a legitimate

requirement in the operation of its railroad. The instructions were designed to secure for the defendant its rights and not to deny to others their rights. They were clearly free from all taint of malice.

The plaintiff does not suggest that it is possible to find malice in the purpose of the managers of the defendant. His insistence is that malice might properly have been found by the jury in the conduct of the agents who were entrusted with the execution of the instructions of the managers. He claims that the bearing and language of those agents were insulting to him and evinced a purpose to humiliate him in the eyes of his fellow-passengers. A careful examination of the evidence brings us to quite an opposite conclusion to this. We think that the most that can be claimed under the evidence is that in the short altercation about the packages, there were some asperities of conduct and language on both sides; but we conclude that upon the part of the agents of the defendant the asperities were not malicious, either through intentional or wanton disregard of the rights and self-respect of the plaintiff. It is quite plain to us that they were a natural sequence of the plaintiff's own attitude and language.

It is our opinion that there was no evidence to justify the assessment of exemplary damages, and that the trial judge rightly charged the jury in that particular.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 14.

*For reversal*—None.