60 N.J. Super. 513 (1960)
159 A.2d 439
JOSEPH TIBERI, PLAINTIFF-RESPONDENT,
v.
ANTHONY PETRELLA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1960.
Decided April 4, 1960.
*515 Before Judges GAULKIN, SULLIVAN and FOLEY.
*516 Mr. Irving N. Yankowitz argued the cause for defendant-appellant.
Mr. William J. Camarata argued the cause for plaintiff-respondent (Messrs. Camarata and Colonna, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a judgment entered in the Essex County Court. The case was tried without a jury.
Our examination of the record satisfies us that the factual findings and conclusions of the trial judge as set forth in his oral deliverance were fully supported by the evidence. They follow:
"In this case, Joseph Tiberi, as plaintiff, seeks compensatory and punitive damages on a charge of atrocious assault and battery committed maliciously upon him by the defendant on February 15, 1958. By answer, defendant admits a striking, but denies malice, and in the manner of separate defenses avers, one, self-defense and two, that plaintiff incited the alleged assault. The matter was pretried and accordingly moved for trial before the Court without a jury. Upon the close of all the proofs and summations of counsel, the issue was submitted for determination.
As appears in the record, the factual circumstances are in sharp dispute as to what gave rise to the act of this atrocious assault and battery, as well as of the conduct of the parties following the occurrence, and the extent of damages, all of which present a factual case. In that situation, my consideration of the evidence produces the following findings of fact:
The parties had known each other about ten years. Plaintiff was the godfather of one of defendant's children. On Saturday, February 15, 1958, the defendant caused plaintiff to be called by telephone, requesting plaintiff to come to the defendant's residence and assist in starting a disabled motor vehicle. Upon plaintiff's arrival there, the parties met. Following some mutually expressed cross words, an incident of combat occurred. What was said and why are in direct dispute, but it can be concluded that the discussion involved an occasion of plaintiff's alleged previous misconduct in relation to defendant's wife. Whatever that circumstance was, it had relation to a happening on the previous Thursday, about which defendant was not told until Friday, without any action on defendant's part until Saturday, February 15, 1958. Although what gave impetus to the questioned assault, including who took initial *517 action, is specifically contradicted, it clearly appears that defendant acquired a solid iron pipe, described as about one inch in diameter and a yard long, which he admits he swung at plaintiff, but insisting without making any contact. Contradictions follow that event as to which party had control of the pipe during a continuing wrestle or struggle. Such posture of the proof presents the direct question, beyond the fact of which party was the original offender: Was [sic] the force used in the matter of self-defense equal to assault initiated, or did the extent of the assumed act of defendant exceed, by means of the use of the said pipe, conduct which was reasonably required or essential? At this point I find as a fact that defendant did make use of the described instrument in striking plaintiff's right arm and elbow and that such use was unwarranted under the prevailing and believable circumstances of the altercation. As to that situation, I am satisfied by the preponderance of the evidence that the element of defendant's liability as an aggressor is established. I should add that I consider that the disclosed demeanor and disposition of defendant toward anger convince me of his guilt of malicious assault and battery upon the plaintiff."
The court awarded compensatory damages in the amount of $15,000 and punitive damages in the amount of $1,000.
Initially the defendant attacks the judgment upon the ground that an "atrocious assault and battery" is unknown to civil jurisprudence. As a corollary, it is urged that the "finding of atrocious assault and battery was beyond the scope of the issues as limited by the pleadings and pretrial order." Basically the argument seems to be that atrocious assault and battery is defined only in our criminal law, N.J.S. 2A:90-1; State v. Capawanna, 118 N.J.L. 429 (Sup. Ct. 1937), and hence is cognizable only in criminal proceedings. Under the statute the offense is described as "maiming or wounding of another," and in State v. Capawanna, supra, the assault and battery interdicted is described as one which is "savage and cruel in character." The obvious purpose of the statute was to categorize such offenses as aggravated assaults and thus to distinguish the degree of criminality involved from that of the simple assault which is now punishable as disorderly conduct. N.J.S. 2A:170-26. In the civil law the distinction is unnecessary since the savagery of the attack and the effect of it upon *518 the victim have bearing only upon the issue of damages, compensatory or punitive as the case may be. The tort involved is assault and battery; the word "atrocious," being in legal purview merely descriptive of the assault and battery, is surplusage. Compare Zick v. Smith, 95 N.J.L. 388 (Sup. Ct. 1921), affirmed o.b. 97 N.J.L. 351 (E. & A. 1922), and Noback v. Town of Montclair, 33 N.J. Super. 420 (App. Div. 1954) (cases allowing recovery for "atrocious assault and battery"). For this reason it is of no moment that the assault and battery was not described in the complaint as "atrocious," and that the seventh paragraph of the pretrial order referred to assault and battery as the legal issue rather than "atrocious assault and battery." Also we note that paragraph one of the pretrial order (to which counsel for defendant subscribed his consent) described the action as being one "arising out of atrocious assault and battery."
Next it is urged that the proof of the case revealed no evidence of malice thus making an award of punitive damages unjustified. Malice may be presumed from the manner in which an assault is committed. 4 Am. Jur., Assault & Battery, § 147 (1936). Where injury is inflicted in a spirit of malice, within which may be embraced both a deliberate purpose to override the rights of another and a wanton disregard of his physical safety, punitive damages may be awarded. Bullock v. Delaware L. & W.R., 61 N.J.L. 550 (E. & A. 1898). The findings of the trial court as hereinabove set forth fully satisfy this requirement. Also the quantum of the award of exemplary damages comports with the rule that they must bear a reasonable relationship to the compensatory damages. See 25 C.J.S. Damages § 126, p. 740 (1941).
Lastly, defendant contends that the compensatory damages awarded were excessive. We cannot agree. The evidence justified the finding by the county court that plaintiff sustained out of pocket losses of approximately $9,500. His injuries consisted in a compound comminuted fracture *519 of the right ulna with a fracture of the radius resulting in an obvious permanent deformity of the right arm.
In the repair of the injured member plaintiff's physician found it necessary to bind the bone fragments with metal bolts. In the course of convalescence by "constant small motion of the arm" undertaken on doctor's orders the bolts were broken thus delaying maximum rehabilitation. Defendant takes the position that the breaking of the metal healing aids was an intervening cause of prolonged disability and consequent loss of earnings for which he was not responsible. The law is otherwise. A wrongdoer is answerable for an injury which in the ordinary and natural course of events ensues from the wrongful act even though it be immediately produced by an intervening cause, if such intervening cause was put in operation by the primary wrongful act. Millman v. United States Mtg. & Title Guar., Co., 121 N.J.L. 28, 36-37 (Sup. Ct. 1938).
Affirm.