246 N.J. Super. 547 (1991)
588 A.2d 408
ANNETTE MONTURI AND ROY MONTURI, HUSBAND AND WIFE, PLAINTIFFS-APPELLANTS,
v.
ENGLEWOOD HOSPITAL; GYNECOLOGICAL & OBSTETRICAL SERVICES OF ENGLEWOOD, P.A.; EDWARD SHNAYERSON, M.D.; VICTOR BORDEN, M.D.; ROBERT H. GLICK, M.D.; BRUNO BUFALINI, M.D.; A. PREZIOSO, M.D.; AND U. SABATO, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1991.
Decided March 15, 1991.
*548 Before Judges DREIER, ASHBEY and LANDAU.
*549 Mary K. Cabala argued the cause for appellants (Mary K. Cabala, on the brief).
M. Christie Wise argued the cause for respondents Englewood Hospital Association and Anthony Prezioso, M.D. (Bumgardner, Hardin & Ellis, attorneys; Robert L. Polifroni, of counsel; M. Christie Wise, on the brief).
Maura Waters Brady argued the cause for respondent Robert Glick, M.D. (Giblin & Combs, attorneys; Craig S. Combs, of counsel; Maura Waters Brady, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
In this medical malpractice case, plaintiff[1] appeals by leave granted from a partial summary judgment in favor of Englewood Hospital, Robert H. Glick, M.D., and Anthony Prezioso, M.D.[2] dismissing plaintiff's punitive damages claim.
Taking all factual disputes as resolved in plaintiff's favor, plaintiff, while expecting the birth of her third child, received prenatal care from defendant Glick's medical group, Gynecological and Obstetrical Services of Englewood. In connection with that care, plaintiff planned to have tubal ligation surgery following the delivery. She signed a surgical consent form in advance in Glick's office which said:
I authorize Dr.... Glick and whomever he/she may designate as assistant or associate to perform the following procedure(s): Obstetrical Management (Labor & Delivery), Episiotomy and repair, Fetal monitoring, Caesarean Section if necessary.
At the side of this form was written in hand "and postpartum tubal ligation." That modification was also signed by plaintiff.
Plaintiff was admitted to Englewood Hospital, while in labor, early in the morning on January 16, 1987. There she signed *550 another consent form regarding the tubal ligation surgery. This form read,
I authorize Dr.... Glick ... and whomever he/she may designate as assistant or associate to perform the following procedure(s): Post Partum Bilateral Tubal Ligation.
Plaintiff's signature was witnessed by a nurse, and Glick's signature and certification were attached the following day.[3] In her claim plaintiff said (and it appears undisputed) that Glick arrived at Englewood Hospital at 10:00 a.m. that day, accompanied by his 5-year old grandson. Glick introduced the child to plaintiff and then told the child to wait outside in the nurses' lounge. Just prior to the operation, Glick summoned the hospital surgical resident, Dr. Prezioso, and at 10:40 a.m., either in the operating room or in the hall outside, he introduced the resident to plaintiff as his assistant. Glick admitted not telling plaintiff what was meant by that term.
During the operation plaintiff's bowel was perforated. Repair was performed by a general surgeon who was summoned to the operating room. While recovering from the tubal ligation, plaintiff allegedly suffered adverse consequences, forming the basis for her compensatory claim which is still pending. This appeal turns on the legal significance of the roles played by Glick and Prezioso, the two operating doctors.
At her deposition, one of the nurses said that the first incision in the operation was made by Prezioso, and that shortly after that, it was Prezioso who perforated the bowel. Glick said that he performed the first incision. There was no dispute, however, that Glick performed the actual tubal ligation.
It is axiomatic that on a motion for summary judgment, a trial court may decide in favor of the moving party only "if the pleadings, depositions, answers to interrogatories and admissions *551 on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). All doubts and unresolved inferences must be resolved in favor to the non-moving party. Baer v. Sorbello, 177 N.J. Super. 182, 185, 425 A.2d 1089 (App.Div.), certif. denied 87 N.J. 388, 434 A.2d 1070 (1981). This is also the standard of appellate review. See Shebar v. Sanyo Business Systems Corp., 111 N.J. 276, 280, 544 A.2d 377 (1988).
At issue is whether the proffered facts supported a finding that either of the doctors had committed the intentional tort of "ghost surgery" battery. That claim must be understood within the context of punitive damages in general. Punitive damages are generally characterized as punishment or deterrence for particularly egregious conduct. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48, 477 A.2d 1224 (1984); Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454, 375 A.2d 652 (1977). Such damages often depend on malice, defined as ill will, a willingness or intent to injure. See Bock v. Plainfield Courier-News, 45 N.J. Super. 302, 312, 132 A.2d 523 (App.Div. 1957). See also 49 Prospect Street Tenants Assoc. v. Sheva Gardens, Inc., 227 N.J. Super. 449, 479, 547 A.2d 1134 (App.Div. 1988); Edwards v. Our Lady of Lourdes Hospital, 217 N.J. Super. 448, 460, 526 A.2d 242 (App. Div. 1987); Berg et al. v. Reaction Motors Div. Thiokol Chemical Corp., 37 N.J. 396, 413, 181 A.2d 487 (1962).
No "malice" or intent to injure, however, is required to establish battery in general or specifically, "ghost surgery." In Perna v. Pirozzi, 92 N.J. 446, 457 A.2d 431 (1983), the Supreme Court held that such a battery results when a medical procedure is performed by a "substitute" doctor regardless of good intentions. Id. at 459-465, 457 A.2d 431. The Court there *552 took notice of standards published by the Judicial Council of the American Medical Association, which read:
To have another physician operate on one's patient without the patient's knowledge and consent is a deceit. The patient is entitled to choose his own physician and he should be permitted to acquiesce in or refuse to accept the substitution. The surgeon's obligation to the patient requires him to perform the surgical operation: (1) within the scope of authority granted by the consent to the operation; (2) in accordance with the terms of the contractual relationship; (3) with complete disclosure of all facts relevant to the need and the performance of the operation; and (4) to utilize his best skill in performing the operation. It should be noted that it is the operating surgeon to whom the patient grants consent to perform the operation. The patient is entitled to the services of the particular surgeon with whom he or she contracts. The surgeon, in accepting the patient is obligated to utilize his personal talents in the performance of the operation to the extent required by the agreement creating the physician-patient relationship. He cannot properly delegate to another the duties which he is required to perform personally.

Under the normal and customary arrangement with private patients, and with reference to the usual form of consent to operation, the surgeon is obligated to perform the operation, and may use the services of assisting residents or other assisting surgeons to the extent that the operation reasonably requires the employment of such assistance. If a resident or other physician is to perform the operation under the guidance of the surgeon, it is necessary to make a full disclosure of this fact to the patient, and this should be evidenced by an appropriate statement contained in the consent.

If the surgeon employed merely assists the resident or other physician in performing the operation, it is the resident or other physician who becomes the operating surgeon. If the patient is not informed as to the identity of the operating surgeon, the situation is "ghost surgery." Judicial Council of the American Medical Ass'n, Op. 8.12 (1982).
Id. at 463, 464 n. 3, 457 A.2d 431 (emphasis added). Ghost surgery "remains a battery even if performed skillfully and to the benefit of the patient." Id. at 463, 457 A.2d 431. Thus, the Court concluded that,
[i]f an operation is properly performed, albeit by a surgeon operating without the consent of the patient, and the patient suffers no injuries except those which foreseeably follow from the operation, then a jury could find the substitution of surgeons did not cause any compensable injury. Even there, however, a jury could award damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent. Furthermore, because battery connotes an intentional invasion of another's rights, punitive damages may be assessed in an appropriate case. Blackmore v. Ellis, 70 N.J.L. 264, 265 [57 A. 1047] (E. & A. 1904); Tiberi v. Petrella, 60 N.J. Super. 513, 518 [159 A.2d 439] (App.Div. 1960); Kinikin v. Heupel, 305 N.W.2d 589, 593 (Minn. 1981).
*553 Id. 92 N.J. at 461, 457 A.2d 431 (emphasis added). See also Largey v. Rothman, 110 N.J. 204, 208, 540 A.2d 504 (1988) and Tonelli v. Khanna, 238 N.J. Super. 121, 126-128, 569 A.2d 282 (App.Div.), certif. denied 121 N.J. 657, 583 A.2d 344 (1990).
The motion judge held that there was no ghost surgery here because plaintiff consented to a particular surgeon and his assistant performing an operation which was performed by that surgeon and his assistant. The judge distinguished Perna, noting that in that case the only authorized operating surgeon had substituted another unauthorized operating surgeon. No question of an assisting physician was involved.
We do not necessarily endorse such a narrow reading of Perna in the light of American Medical Association standards cited with approval by the Supreme Court. Perna, supra, 92 N.J. at 463, 464 n. 3, 457 A.2d 431. We affirm the partial summary judgment nonetheless. Despite ancillary issues of fact, it was undisputed that plaintiff executed two consent forms, both permitting Glick and Glick's assistant to do a tubal ligation. Plaintiff did not claim that the medical procedure did not reasonably require the services and talents of two doctors. Glick's assistant was introduced as such to plaintiff. Glick never left the operating room, and actually performed the tubal ligation which was the surgery plaintiff authorized him to perform.
Punitive damages are an exception from our compensatory damage scheme. As we have earlier outlined, such damages are available only in consequence of intentional torts or as punishment for particularly egregious behavior. Missing from plaintiff's proof that she was the victim of "ghost surgery", a form of the intentional tort of battery, was any proof concerning the proper role of assistant and operating surgeon in the surgery which plaintiff authorized. Since Glick performed the ligation, at the very least, plaintiff had to demonstrate by competent medical opinion that making the first incision converted Prezioso into the unauthorized operating surgeon. To *554 rule otherwise would be to create a punitive damage claim based on plaintiff's lay opinion concerning the proper role of her authorized surgeon in team surgery. We are satisfied, as was the motion judge, that such a result is not dictated by Perna.
Affirmed.
NOTES
[1] Roy Monturi is a plaintiff per quod. We here refer to Annette Monturi as plaintiff.
[2] Complaints against other named defendants have been dismissed.
[3] A factual dispute exists concerning whether plaintiff's consent was informed. Plaintiff claims the risks of the procedure were never explained, and the form itself was not explained until she was in the recovery room after the tubal ligation. A resolution of that factual issue is not necessary to this appeal.