TOMLIN ADSM. DEN, EX DEM. COX.

On argument of rule to show cause why verdict should not be set aside &c.

1. The court will set aside a verdict, in a doubtful or contested case, if it appears that the prevailing party by himself, his retainers or agents, has been in private communication or held any conversation with one or more of the jurors, on the subject of the trial, during its progress.

2. The court will not stop to inquire, whether a juror was influenced or not, by what was said to him. It is an inquiry of too delicate and difficult

a character to be made the base of judicial action in such a matter. It is enough that the party was in private intercourse with the juror on the subject of the trial.

3. An affidavit made by one who had been a witness in the cause, swearing to further important facts, not stated by him on the trial, because his recollection did not then serve him, is only cumulative evidence, and not sufficient ground for granting a new trial.

4. Upon a question of boundary, the acts and declarations of one under whom the party claims, is competent evidence, if such acts were done or declarations made while he was in possession as owner.

5. Courts of law have concurrent jurisdiction with courts of equity in cases of fraud : and will not permit a plaintiff to recover in any case, where upon the same evidence of actual or constructive fraud, a court of equity would decree against him.

6. If he who has the legal title, by his acts and conversations, induces another to purchase the premises under another title, and stands by and sees him take a deed and pay his money for it, it is a fraud *per se*.

Argued and decided orally, at May Term, 1842.

*H. W. Green* in support of rule.

*L. Q. C. Elmer*, contra.

The opinion of the Court, was delivered by

HORNBLOWER, C. J.   The plaintiff claimed title to the premises in question, under a survey made for Jeremiah Towser, dated April 4, 1798, and by a deed from him to William Towser, dated in June, 1798, and by conveyances from the heirs of William Towser, in February, 1837, and June, 1839.   The title of the plaintiff appears to depend upon the true location of a certain line, called the Bierly line ; and it may be that that line, accurately surveyed, would be found to be in accordance with the plaintiff's claim.   But in the summer of 1804, disputes existing as to the true course of that line, Joshua Brick, as agent for Griffith and Hughes, who claimed the Bierly tract, called a meeting of the different persons interested in the settlement of the Bierly line : about forty of them attended ; and it was then agreed, that a surveyor should be employed and the line be run, in the presence of a Mr. Corsen, as agent for the claimants, and of Mr. Brick, as agent for Griffith and Hughes.   On the part of G. and H. it was stipulated, that if any part of the lands

claimed under the Towser, or other surveys, should be found to lie within the Bierly survey, such claimants should be entitled to the right of pre-emption. The line was run, most, if not all, of the claimants being present, and among the rest, Jeremiah Towser, and William Towser, under whom the plaintiff claims. The tract claimed by William Towser, including the four and a half acres, being the premises in question, were found to lie within the Bierly tract. Most, if not all the persons, whose lands were found, by the line, as then run, to lie within the Bierly survey, came in and took deeds under Griffith and Hughes. A deed was also offered to William Towser; but by his directions, a deed for the premises in question, was made to William Clark, who had been present at the survey; and to whom, as it was abundantly proved by three or four witnesses, William Towser had sold his right of pre-emption, for an ox cart and six dollars in money, all of which he had received. William Towser however, took a deed from G. and H. for the residue of his land included by this running in the Bierly survey.

The deed from G. and H. to Clark, was dated the 23d Nov. 1804. Clark entered upon the premises; cleared or cut upon it; enclosed it and continued in possession until he died, in 1827.

On the death of Clark, Joseph Lord, his administrator, sold the premises at auction, under a decree of the Orphans' Court, and on the 16th June, 1828, conveyed them to Tomlin the defendant, who purchased them at that sale. Cox, the lessor of the plaintiff was present at the sale, and bid for the property, but was over-bid by Tomlin, who became the purchaser. Nevertheless, long after that time, and as late as 1837 and 1839, Cox obtained conveyances from the heirs of William Towser, in virtue of which he now claims title.

If the premises lay within Towser's survey, as the jury must have believed they did, then the title was in Jeremiah Towser, and passed by his deed of June, 1798, to his brother William Towser; and upon his death to his heirs at law, and by their deeds of 1837 and 1839, to Cox, the lessor of the plaintiff.

So far then as the rights of these parties, depend upon the true location of the Bierly line, they have been settled by the verdict of the jury. They have found the premises in question, not to be a part of the Bierly tract; and if that fact is conclusive

Tomlin adsm. Den, ex dem. Cox.

against the defendant; and if there is nothing to impeach the verdict of the jury, to whom that question was fairly submitted by the court, we ought not to grant this motion.

But there is an impeachment of that verdict. After the evidence had been closed, and the cause summed up by counsel, a recess of the court took place; during which, the lessor of the plaintiff had a private interview with one of the jurors. What was the extent, and what the particulars of the conversation that passed between them, is not ascertained to the court: but enough appears by the affidavits that have been read, to satisfy us that it related to the matters in dispute in this cause. They were in conversation about the line trees that had been spoken of by the witnesses; and Cox, the plaintiff was heard to tell the juror, that a certain stump had been a line tree in the Bierly line for thirty or forty years. The affidavit of the witness, by whom these matters are disclosed, is corroborated by that of another very credible witness, to whom the juror admitted, he had had a conversation with the plaintiff about the cause, the particulars of which the juror however, declined stating; giving as a reason that he did not remember what passed between him and the plaintiff.

On this ground alone, if for no other cause, I am of opinion, there ought to be a new trial. To guard against such improper interference with jurors, and to keep the streams of justice pure and uncontaminated, jurors were formerly kept together, from the time they were impaneled and sworn, until they rendered their verdict. The increase of litigation and the length and intricacy of causes, growing out of the extended and complicated transactions of a mercantile and trading people, long since rendered it necessary to relax this rigid practice, which was found to be inconvenient and oppressive to courts and jurors. But since they have been permitted to separate during the progress of trials, courts have sedulously endeavored to protect them from the out-door interference of parties and their coadjutors, by setting aside verdicts in all cases where such attempts have been made, without stopping to inquire, whether they had had any influence on the verdict, or not.

In this case, the prevailing party was seen to be in communication with one of the jurors, and was distinctly heard speaking

Tomlin adsm. Den, ex dem. Cox.

to him in relation to the matters in controversy.   That juror too, there is some reason to believe, was one of his warmest advocates, in the jury room : but I place no stress on that circumstance.   The inquiry, whether the juror was influenced or not, by what was said to him, is of too delicate and difficult a character, to be made the basis of judicial action on this matter.   It is enough, that the party was in private intercourse with the juror, on the subject of the trial : and I am willing it should be understood to be the determination of the court, to set aside every verdict in a doubtful or contested case, if it can be ascertained that the prevailing party ; by himself, his retainers or agents, has held any private conversation with a juror, out of court, on the subject of the cause, while it was on trial.   Indeed, I am almost willing to go further, and say, that a verdict ought to be set aside, if it can be shown, that the prevailing party has manifested to a juror, any unusual civilities or attentions ; such as treating or entertaining him at his expense, or having any other communications with him, during the progress of the trial, save such as is called for by the ordinary proprieties of life, between fellow citizens when they accidentally meet each other.

But several questions touching the law and merits of the case, were discussed on the argument : and in order to save further litigation : or, if the cause should be again carried down for trial, that the Circuit Court may be advised of the opinion of this court, on those matters, I will briefly examine the points that were raised.

The plaintiff puts himself upon his strict, legal, documentary title, and the fact, as found by the jury, that the lands covered by his deeds, do not lie within the Bierly survey, under which the defendant claims.   To this the defendant answers :  First, that the premises are a part of the Bierly tract and that the verdict of the jury upon that point was contrary to, or at least not sustained by the evidence in the cause.

As to that matter, I have already intimated my opinion, that so far as the rights of the parties depend upon the question as to the true line, I do not see anything in the case to justify our interfering with the verdict.   Secondly, the defendant insists, that he, and Clark under whom he claims, had twenty years adverse possession of the premises.   The deed from Griffith Hughes

to Clark, was made in 1804: and the conveyance from the administrator of Clark to the defendant, was made in 1828. On the part of the plaintiff, however, it is denied, that there has been such adverse possession as to protect the defendant. That William Towser, some years after the conveyance to Clarke, by G. and H. re-asserted his title, by entering upon the premises and cutting wood upon it, with the knowledge of and in defiance of Clark; and that afterwards, and within twenty years before this suit brought, one Layton, under and by permission of Towser, put up a small building or shanty on the land, and occupied it for a year or more.

The weight of the evidence on this point, so far as it appears in the state of the case, seems to me to be decidedly on the side of the defendant; and I think if I had been a juror, I should have found in his favor, on the question of possession. But that matter was fairly submitted to the jury, and as there was some conflicting testimony in relation to it, I do not think a new trial should be granted on that ground. The affidavit of Joseph Lord, taken since the trial, goes very strongly to show, that Towser or Layton under him, never had anything like a possession since the year 1817: but this is not like the case of *Richardson* v. *Fisher,* 1 *Bingh.* 145, (in 8 *Engl. C. L. R.* 273.) There a material witness, had made a very serious mistake on the trial, and it so appeared by his affidavit. In this case the evidence is only cumulative, and cannot therefore constitute a ground for granting a new trial. *Deacon* v. *Allen,* 1 *South. R.* 338; *Sheppard* v. *Sheppard,* 5 *Halst. R.* 250; *Den* v. *Geiger,* 4 *Halst.* 225. But Thirdly, the defendant insists, that it was a question of boundary; that whether the land belonged to Towser or to Griffith and Hughes, depended on the true running of the Bierly line; that the acts and declarations of those under whom a party claims are competent evidence on such a question, and that Towser, by acquiescing in the line run in 1804; taking a deed from Griffith and Hughes for a part of his tract, and selling and receiving pay from Clark, for his pre-emption right to the rest of it, had clearly admitted, that the premises in question, laid within the Bierly tract. It seems to me, that this position is well taken. The doctrine is fully sustained by the cases, *Townsend* v. *Johnson, Penn.*

*R.* 706, *new ed.* 519 ; *Jackson* v. *Bard,* 4 *Johns. R.* 230, and the cases there cited.

I am further of opinion, that if Towser knew that the premises in question, were within his own survey, and that they did not belong to Griffith and Hughes : and yet sold his right of preemption to Clark ; received from him a consideration therefor : stood by and saw Clark purchase from Griffith and Hughes, and pay them for the land, it was a fraud in him, and he ought not to be permitted to recover at law against Clark, or any claiming under him. *Exec's. of Wendell* v. *Van Rensellaer,* 1 *Johns. C. R.* 344, 354, and cases there cited ; *Fleming* v. *Slocum,* 18 *Johns. R.* 403 ; *Jackson* v. *Crafts,* 18 *Johns. R.* 110 ; *Jackson* v. *Burgott,* 10 *Johns. R.* 457 ; *Den* v. *Lecony, Coxe R.* 39. These cases also show, as does the case of *Den* v. *Sparks,* in *Coxe R.* 56, that courts of law have concurrent jurisdiction with courts of equity, in cases of fraud : or, in other words, that a plaintiff cannot recover at law, in any case, where, upon the same evidence of actual or constructive fraud, a court of equity would decree against him.

Let the rule be made absolute, and the costs abide the event of the suit.

WHITE, NEVIUS and WHITEHEAD, Justices, concurred.

ELMER, J. had been of counsel in the cause, and gave no opinion.

*Rule absolute.*

CITED *in Eakin* v. *Mor. Can. & B'kg Co.,* 4 *Zab.* 541 ; *Ten Eyck* v. *Runk,* 2 *Dutch.* 517 ; *Horner* v. *Stillwell,* 6 *Vr.* 310.