115 N.J. Super. 555 (1971)
280 A.2d 499
ANTHONY F. PESSINI, PLAINTIFF,
v.
MARY MASSIE, GEORGE VANARELLI AND NEW JERSEY COLLEGE OF MEDICINE AND DENTISTRY, DEFENDANTS. MARY MASSIE EBERHARDT AND WILLIAM EBERHARDT, PLAINTIFFS,
v.
GEORGE VANARELLI AND NEW JERSEY COLLEGE OF MEDICINE AND DENTISTRY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 30, 1971.
*556 Mr. Jacob M. Goldberg, attorney for plaintiff Pessini.
Mrs. Mabel L. Richardson, attorney for plaintiffs Eberhardt.
Mr. John P. McGee, for defendant Mary Massie Eberhardt (Messrs. Gaffey, Webb & McDermott, attorneys).
Mr. Kenneth J. Fost, for defendants George Vanarelli and New Jersey College of Medicine and Dentistry, (Messrs. Stevens and Mathias, attorneys).
KIMMELMAN, J.S.C.
This matter is before the court on a motion for a new trial. It is argued that error was committed by the trial court in allowing the jury, over the timely objection of counsel, to separate and retire to their homes for the evening, thereby temporarily suspending their deliberations before they had reached a verdict.
By way of background, it is appropriate to record certain salient facts: On May 5, 1969 at approximately 5:30 P.M. at the intersection of Halsey and Market Streets in the City of Newark, and during the height of rush-hour traffic, an ambulance owned by defendant New Jersey College of Medicine and Dentistry and operated by defendant George Vanarelli in an easterly direction on Market Street collided with a car owned and operated by Mary M. Eberhardt. The force of the collision drove the Eberhardt vehicle to the southeast *557 corner of the intersection where it mounted the curb in front of the Larkey store, striking and injuring plaintiff Anthony F. Pessini. As a result of the collision Pessini brought suit against Mrs. Eberhardt, the College and the ambulance driver, and Mrs. Eberhardt in turn filed a separate action against the College and the ambulance driver. Both actions were consolidated for trial and tried before a jury solely as to the issue of liability.
The trial was relatively short, commencing on the morning of June 28, 1971, with testimony and summations concluded by 12:30 P.M. on June 29, 1971. Between 1:30 and 2 that afternoon the jury was instructed as to the law and thereupon retired to deliberate upon its verdict. Pursuant to R. 4:39 the court requested that the jury not render a general verdict but that written interrogatories be answered. Said interrogatories, containing the issues to be decided, were as follows:
1. Was the defendant Mary Massie Eberhardt guilty of negligence which was the sole proximate cause of the injuries of plaintiff Anthony F. Pessini?
2. Was the defendant George Vanarelli guilty of negligence which was the sole proximate cause of the injuries of the plaintiff Anthony F. Pessini?
3. Where the defendants Mary Massie Eberhardt and George Vanarelli both guilty of concurrent negligence which combined to proximately cause the injuries of the plaintiff Anthony F. Pessini?
4. Was the defendant George Vanarelli guilty of negligence which was the sole proximate cause of the injuries of plaintiff Mary Massie Eberhardt?
The jury retired at approximately 2 P.M. to begin its deliberations; it returned at 3:15 P.M. with several questions and accordingly received additional instructions in the presence of counsel; it again returned at 5 P.M. with further questions and likewise received further instructions. At that point the following colloquy took place:
Court: Now the hour is just after five. I would like to ask the foreman of the jury whether you feel that with more deliberations you can reach a verdict now.
*558 Foreman: I don't believe we could reach a verdict right now.
Court: What I am going to do is this. The parties to this case have a right to have their matter decided. There is no reason to suppose that another twelve people will be any more intelligent than you. I think this jury is very well-equipped to bring in a verdict. You have a responsibility to bring in a verdict if it doesn't do violence to your own individual consciences. But you also have a responsibility to listen to the opinions of your fellow jurors and change your opinions if you feel that perhaps the other opinion is better founded in the facts and in the inferences to be drawn from the facts based upon your everyday experience. It is burdensome for this matter to be retried, and I would not want it to be retried if at all possible. Now, apparently you require more time to deliberate. Is that correct?
Foreman: Yes, that is correct.
Court: The court will do this and instruct you. This Courthouse is not located in the most desirable section of Newark. I therefore hesitate to have a jury out deliberating much beyond this hour. I will instruct you that you may return home this evening for dinner and do whatever you would do in your normal everyday life, and you will return here tomorrow morning at 9:30 to continue deliberating on this case in accordance with the instructions as I gave them to you at 1:30 today and as I just reiterated to you now at five minutes after five. However, I have one serious word of caution. Under no circumstances are you to discuss this matter with anyone. You are not to call any juror, any co-juror or fellow juror on the phone to discuss this case. You are not to discuss it with your family because your families have not heard the evidence nor have your families or friends heard the comments of your fellow jurors and you would be doing a disservice not only to the court but to counsel, the witnesses and to the other jurors, your fellow jurors, if you discuss this case with anyone. But I have a feeling that with a little more deliberation, as your foreman says, coupled with the latest instructions that I have given you, that you can arrive at a verdict; and so I will ask you to take a recess now and return tomorrow morning at 9:30 to resume your deliberations. That will be the ruling of the court.
The following morning, June 30, 1971, the jury returned to the courthouse, attendance was taken in the presence of counsel, and the jury again retired to the jury room to resume its deliberations. Shortly thereafter, in approximately 15 minutes, the jury returned with answers to all interrogatories. In the order listed, their answers to the questions were:

 1. Yes 2 No 10
 2. Yes 2 No 10

*559
 3. Yes 10 No 2
 4. Yes 2 No 10

Accordingly, the court directed a verdict in favor of plaintiff Anthony F. Pessini against all defendants, including Mrs. Eberhardt, on the issue of liability, and a verdict of "no cause" against Mrs. Eberhardt on her suit against the College and its ambulance driver.
On behalf of Mrs. Eberhardt it is now argued that allowing the jurors to retire to their homes for the evening in effect constituted an irregular influence which is presumed to be prejudicial, the test being not whether the jury was actually influenced by the irregularity but whether the same had the capacity to influence their result. Although no New Jersey precedent dealing with the precise issue involved has been cited or found, counsel relies upon Panko v. Flintkote Co., 7 N.J. 55 (1951) where the court held:
The fundamental right of trial by a fair and impartial jury is jealously guarded by the courts. A jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge, based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. A jury can act only as a unit and its verdict is the result of the united action of all the jurors who participated therein. Therefore, the parties to the action are entitled to have each of the jurors who hears the case, impartial, unprejudiced and free from improper influences. Payne v. Burke, 236 App. Div. 527, 260 N.Y.S. 259 (N.Y. App. Div. 1932); Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 150, 36 L.Ed. 917 (1892); 66 C.J.S., New Trial, § 47, page 162; Ibid. § 61, page 188.
It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge. If the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. It is said to be "imperatively required to secure verdicts based on proofs taken openly *560 at the trial, free from all danger by extraneous influences." Lamphear v. MacLean, 176 App. Div. 473, 162 N.Y.S. 432 (N.Y. App. Div. 1916); Gall v. New York & New Brunswick Auto Express Co., 132 N.J.L. 466, 468 (E. & A. 1944); In re Phelan, 126 N.J.L. 410, 411 (Sup. Ct. 1941); Den ex dem. Cox v. Tomlin, 19 N.J.L. 76, 80 (Sup. Ct. 1842); Consumers' Coal Co. v. Hutchinson, 36 N.J.L. 24, 26, 28 (Sup. Ct. 1872); Sloan v. Harrison, 1 N.J.L. 123 [Reprint page 145] (Sup. Ct. 1792); In re Collins, 18 N.J. Misc. 492, 497 (Cape May Co., Cir. Ct. 1940); York v. Wyman, 115 Me. 353, 98 A. 1024, L.R.A. 1917B, 246 (Me. Sup. Jud. Ct. 1916); 39 Am. Jur., New Trial, § 96, p. 111 [at 61-62]
See also, Kavanaugh v. Quigley, 63 N.J. Super. 153, 154, 161 (App. Div. 1960); Palestroni v. Jacobs, 10 N.J. Super. 266, 271 (App. Div. 1950); Guzzi v. Jersey Central Power & Light Co., 36 N.J. Super. 255 (App. Div. 1955).
Pursuant to the precepts of Panko, supra, a two-fold determination must be made, i.e., whether the separation of the jury for the evening during the course of its deliberations was an "irregular influence" and, if so, did the irregular influence have a "tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge."
Under the circumstances of this case I am satisfied that the overnight separation of the jury was not an "irregular influence" of the nature and quality interdicted by our courts. Moreover, the separation was not a factor of sufficient caliber to have a tendency to influence the course of the jury's deliberations in a manner inconsistent with the evidence or the court's charge.
In Panko, it appeared that during the course of a trial the brother-in-law of a juror, while at the juror's home, telephoned an officer of defendant corporation to inquire as to the amount of liability insurance carried by the defendant. The inquiry was answered, and although the juror in question denied knowledge of the details of the telephone call, the Supreme Court strongly doubted the juror's denial and accordingly held such incident to constitute an irregularity having the capacity to influence the jury's result.
*561 In Kavanaugh, supra, it was alleged that a bailiff failed to communicate the jury's request for additional instructions to the court and admonished the jury to bring in a verdict one way or the other. While the bailiff's version differed somewhat, the court found a violation of N.J.S.A. 2A:74-7, "Oath of officer attending jury," and likewise held the bailiff's exhortation to bring in a verdict as an irregularity having the capacity to influence.
In Palestroni, supra, the trial judge, in response to a request and without notice to counsel, sent a dictionary into the jury, which was apparently experiencing some difficulty over the definition of a word. Here, again, the court found an irregularity in allowing the jury to peruse something not in evidence and not part of the trial court's charge. Finally, in Guzzi, supra, the court struck down as an irregularity an oral message sent by the trial court through a bailiff to the jury without the presence or knowledge of counsel. The exact words used by the bailiff were not known and hence it was presumed that the same had the capacity to influence.
It is immediately apparent that all of the foregoing cases involved the affirmative interference with the deliberative process or invasion of the province of the jury, either by the communication of a third person, or the examination and use by the jury in the course of deliberations of something not in evidence, or the intervention of a court officer. In the matter at hand no such interference or invasion has been shown. Counsel did not request interrogation of the jurors on their return to court in the morning. To presume any such interference would be to assume that the jurors violated or ignored the court's explicit cautionary instructions delivered to them the prior evening immediately before their separation. This court is unwilling to indulge in such presumption.
Present practice sanctions the separation of jurors after each day's session during civil and criminal trials of more than one day's duration. Jurors are cautioned not to discuss the case under trial or to read newspaper accounts of the *562 same. The invariable presumption is that jurors obey such cautionary instructions. Separation during the course of a trial subjects and exposes jurors to countless everyday experiences, including the various forms of mass media communication. This exposure may very well create impressions and involve influence, conscious or otherwise, of a generalized nonspecific nature. But such impressions and influence in the nature of daily life itself are at the very foundation of the jury system where reasonable men and women bring their common experiences together to draw inferences from and unravel factual situations presented in court. Consequently, in the absence of anything specific, this court hesitates to draw any distinction between allowing a jury to separate during the course of trial or during the course of deliberations.
In the ordinary case it is entirely conceivable that keeping the jury together into the evening hours may in itself constitute an influence having the capacity to unfairly affect their deliberations. Thoughts during these hours naturally turn towards one's home, family or regular routine. Several hours of deliberation without recess, preceded, perhaps, by several hours of sitting in the jury box, will easily tire the sturdiest of jurors. Compelling exhausted or weary jurors, whose attention may not be concentrated on the task at hand, to plod onward is neither realistic nor just to the litigants. Under such circumstances their verdict may not be as trustworthy or reliable as one rendered by a jury fresh from a night spent in familiar surroundings. The possibility of corruption of the jury should not be permitted to outweigh the undesirable effects and real danger of prejudice to the parties by compelling deliberations when respite is indicated.
In the final analysis, whether or not to disperse the jury must be left to the discretion of the trial judge, who has the initial opportunity to observe and gauge the requisite circumstances. Such appears to be the law in most jurisdictions which have had occasion to consider the specific issue. See Annotation, "Separation or dispersal of jury in civil case *563 after submission," 77 A.L.R.2d 1086. Accordingly, after reconsideration of the composite picture presented by this case, no sound reason has been shown to vitiate the jury's verdict.