215 N.J. Super. 240 (1987)
521 A.2d 892
ROBERT L. ROLAND AND GAYLE ROLAND, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
BRUNSWICK CORPORATION, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND EILEEN CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, AND ARTHUR CONKLIN, JR., JANE ROE, A FICTITIOUS DESIGNATION, REAL NAME UNKNOWN, AND JOHN DOE, A FICTITIOUS DESIGNATION, REAL NAME UNKNOWN, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
January 21, 1987.
Decided February 20, 1987.
*242 Geibel & Geibel, attorneys for appellants (Philip L. Geibel, on the brief).
Messineo & Messineo, attorneys for respondents (Anne C. Skau, on the brief).
Before Judges PRESSLER, BAIME and ASHBEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The meritorious issue posed by this appeal arises out of the manner in which the trial court responded to inconsistent answers by the jury to the special interrogatories submitted to it in this personal injury action. We conclude that the nature of the judicial response to that inconsistency impermissibly interfered with the jury's performance of its function.
The action arose out of a bowling alley altercation in which defendant Arthur Conklin, Jr., a member of a bowling team who had become intoxicated, struck and injured plaintiff, Robert L. Roland, a member of the opposing team. Plaintiff and his wife Gayle Roland, who sued per quod, brought this action against Conklin and, ultimately, against Brunswick Corporation, the parent company of Brunswick Recreation Centers which operated the bowling alley, and Eileen Corporation, which held the liquor license. The claim against Brunswick was based on its asserted negligence in serving alcoholic beverages to an intoxicated patron and in failing to provide a safe place for its business invitees. Among other defenses asserted by defendants was the claim that plaintiff's negligence in provoking the physical attack upon him was a proximate cause of the injuries he sustained.
Following a seven-day jury trial, the factual issues were submitted to the jury by way of special interrogatories asking the following questions:
1. Was there an assault and battery of plaintiff by Arthur Conklin?
2. Was the assault and battery of plaintiff by Arthur Conklin a proximate cause of plaintiff's injuries?

*243 3. Do you find that the plaintiffs have proved by a preponderance of the evidence that the employees of the Brunswick Lanes were negligent in continuing to serve intoxicating beverages to defendant Arthur Conklin when a reasonably prudent person would have ceased serving beverages to defendant Arthur Conklin because he was in a visibly intoxicated state, "actually or apparently intoxicated"?
4. Was Brunswick Corporation negligent in failing to supervise and control its patrons so as to provide a reasonably safe place for plaintiff to bowl?
5. Was the negligence of Brunswick Corporation a proximate cause of plaintiff's injuries?
6. Was the plaintiff negligent?
7. Was the plaintiff's negligence a proximate cause of plaintiff's injuries?
8. What are plaintiff Robert Roland's damages proximately resulting from the wrongful conduct of the defendant(s)?
9. What are plaintiff Gayle Roland's damages proximately resulting from the wrongful conduct of the defendant(s)?
10. Taking the combined fault of all parties or either defendant to this law suit which proximately contributed to the happening of this incident, what percentage of such total fault is attributable to:
(a) Defendant Arthur Conklin?
(b) Defendant Brunswick Lanes?
(c) Plaintiff Robert Roland?
Questions 1 through 7 were to be answered by yes or no, questions 8 and 9 by lump sum dollar amounts, and question 10 by a percentage allocation. Upon the conclusion of jury deliberations, the foreperson announced the answers question by question. She reported that the jury had answered the first six questions in the affirmative and question number seven in the negative. As to questions 8 and 9, she reported that the jury's damages verdict was $100,000 in favor of Robert Roland and $5,000 in favor of his wife on her per quod claim. Finally, as to question number 10, she reported that the jury had allocated negligence 60% to defendant Conklin, 35% to defendant Brunswick, and 5% to plaintiff.
A colloquy between court and counsel immediately ensued in response to the evident inconsistency between question number 7, which found that plaintiff's negligence was not a proximate cause of his injuries and question number 10, which found that plaintiff's fault had proximately contributed to his injuries to the extent of 5%. Following the colloquy and apparently overlooking *244 the proximate cause reference in question number 10, the judge instructed the jury to redeliberate as to question 10 alone. After it had retired, it sent the following inquiry to the judge: "Can we change 7 from no to yes?" The judge's responsive instruction to the jury was that it could not reconsider the answer to question 7 but only the answer to question 10. Five minutes later, the jury returned with its new answer to that question which left Conklin's percentage of negligence unchanged, increased Brunswick's from 35% to 40%, and reduced plaintiff's to zero. Judgment was accordingly entered, Brunswick's subsequent motion for a new trial was denied, and this appeal followed.
We are persuaded that the trial judge erred in the manner in which he responded to the jury's original set of answers. To begin with, the answers to questions 7 and 10 were clearly and irreconcilably inconsistent. The answer to question 7 found that plaintiff's negligence had not been a proximate cause, and the answer to question 10 found that it had been, at least to the extent of 5%. Faced with this logical incongruity, the trial judge was obliged to explain the difficulty to the jury and, upon proper supplemental instructions, to require it to reconsider, at the least, both questions to the end of assuring consistent answers accurately reflecting the jury's findings. See Turon v. J. & L. Construction Co., 8 N.J. 543, 551-552 (1952); Bree v. Jalbert, 87 N.J. Super. 452 (Law Div. 1965), aff'd 91 N.J. Super. 38 (App.Div. 1966). See also Butler v. Acme Markets, Inc., 89 N.J. 270, 282-283 (1982). And compare State v. Conway, 193 N.J. Super. 133, 157 (App.Div.), certif. den. 97 N.J. 650 (1984). Instead, the judge, in effect, undertook to resolve the inconsistency himself by instructing the jury to reconsider only one of the questions which had produced the inconsistency. His error in allowing himself to assume which of the inconsistent answers actually comported with the jury's intent was, of course, seriously compounded when the jury's ensuing inquiry indicated that the judge's assumption of where its error lay was most likely incorrect.
*245 We have little doubt that had the jury been permitted to reconsider both questions 7 and 10, as it had requested leave to do, the most probable result would have been a change from no to yes in the answer to question 7 and no change in the answer to question 10. Nor do we have any doubt that the jury had a right so to reconsider and correct its own verdict while the matter is still before it. See Salvato v. N.J. Asphalt & Paving Co., 135 N.J.L. 185, 189-190 (E. & A. 1947); Money v. Etter, 8 N.J. Super. 371, 374 (Law Div. 1950). Finally, we have no doubt that what the jury finally did do in changing its answer to question 10 was directly attributable to the trial judge's improper intrusion into its deliberations. See Neumann v. Wildermann, 35 N.J. Super. 562, 566-567 (App.Div. 1955).
The verdict, therefore, as finally rendered cannot stand. The only question is whether we have the right now to mold the verdict in accordance with the way in which we believe the jury would have responded had it been properly instructed following the initial inconsistency. Our concern in this respect is engendered by the fact that the jury did in the end recalculate the percentage allocation, and the record supports that outcome as well as a finding of 5% plaintiff's negligence. We believe, therefore, that we are thereby precluded from a holding which would ascribe no possibility of self-determination to that action by the jury. On the other hand, our conviction that the jury did in fact intend to find the plaintiff's negligence to have constituted a 5% contribution to proximate cause constrains us from simply setting the verdict aside and remanding for a new trial.
It is our view that the tension here engendered between principles of inviolability of the jury function on the one hand and notions of common sense, fair play and expedition on the other, is best resolved here by resorting to remittitur techniques. Cf. Bishop v. Harski, 191 N.J. Super. 109 (Law Div. 1983). That is to say, the judgment appealed from charges *246 defendant Brunswick with 40% of the responsibility for plaintiff's injuries. In accordance with any reasonable interpretation of the jury's action, it would have been charged with at least 35%. It therefore cannot be in any way prejudiced by a remittitur technique. Plaintiff, on the other hand, was accorded by this judgment the benefit of a zero allocation. This allocation rests on legal error. Moreover, the jury's apparent intention was to charge him with 5% of the responsibility. Since the verdict cannot stand and since we cannot substitute our own judgment based on an apparent rather than a conclusive jury intention, we leave the choice to plaintiff. If plaintiff is willing to accept a molded verdict allocating 5% of the total responsibility to him, then the judgment may be so amended by the trial court. If he is not willing, then we direct that the verdict be set aside and a new trial on liability be conducted. Plaintiff shall advise the trial court and defendant in writing of his choice within 20 days from the date hereof. If he does not so advise the court, it shall enter judgment reversing the verdict and scheduling the matter for a new trial.
Defendant Brunswick Corporation raises other challenges to the verdict. It contends that the trial judge failed to charge properly on principles of comparative negligence, that he erroneously excluded evidence of plaintiff's reputation as a bowling "sandbagger," and that he prejudiced defendant's right to a fair trial by unfairly reprimanding defense counsel. Our careful review of the record satisfies us that all of these contentions are clearly without merit. See R. 2:11-3(e)(1)(E). The principles of plaintiff's negligence were in fact adequately charged, and we are satisfied that the trial judge did not mistakenly exercise his discretion either in respect of the contested evidence ruling or in his demeanor towards defendant's attorney.
The judgment appealed from is reversed. We remand to the trial court for a new trial or entry of an amended judgment as plaintiff shall elect in accordance with this opinion.