704 A.2d 1348

SHAWN MOHAN AND VASA MOHAN, PLAINTIFFS, v. EXXON CORPORATION, JOHNNY JONES, HUSKY COMPANY, ABC COMPANY (A FICTITIOUS NAME), GHI COMPANY (A FICTITIOUS NAME), JKL COMPANY (A FICTITIOUS NAME), MNO COMPANY (A FICTITIOUS NAME), PQR COMPANY (A FICTITIOUS NAME), STU COMPANY (A FICTITIOUS NAME), THUNDER NOZZLES, VWX COMPANY (A FICTITIOUS NAME), DEFENDANTS,EXXON CORPORATION, THIRD PARTY PLAINTIFF/APPELLANT, v. JOHNNY JONES, THUNDER NOZZLES, INC., SUBURBAN FIRE EQUIPMENT COMPANY, INC., AND TEN HOEVE BROTHERS, INC., THIRD PARTY DEFENDANTS, AND HUSKY CORPORATION, THIRD PARTY DEFENDANT/RESPONDENT.

THUNDER NOZZLES, INC., FOURTH PARTY PLAINTIFF, v. QUALITY NOZZLES OF NEW JERSEY INC., FOURTH PARTY DEFENDANT.

HUSKY CORPORATION, THIRTY PARTY PLAINTIFF, v. TEXASGULF, INC., THIRD PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1998—Decided February 10, 1998.

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Richard V. Jones* argued the cause for appellant Exxon Corporation (*Bressler, Amery & Ross*, attorneys; *Charlene C. McHugh*, on the brief).

*Judith A. Heim* argued the cause for respondent Husky Corporation (*Heim, McEnroe & Urciuoli*, attorneys; *Ms. Heim*, on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C. (temporarily assigned).

The jury in this civil case returned a verdict but failed to respond to two written interrogatories which required answers to dispose of the remaining issues in the case. Nevertheless, the jury was dismissed and dispersed. Four days later the trial judge reconvened the jury and instructed the jurors to respond to the two interrogatories. The jury resumed deliberations and reached a verdict. We hold on this appeal that the reconvening of the dismissed and dispersed jury was plain error, and accordingly, we reverse and remand for a new trial limited to the issues decided after reconvening the jury.

The relevant facts are not complex. On October 9, 1987, plaintiff Shawn Mohan (Mohan) was sixteen years old and employed by defendant Exxon Corporation (Exxon) to pump gasoline at a gasoline station owned and operated by Exxon. After pumping gasoline into a customer's automobile, Mohan was removing the hose to return it to one of the station's pumps when the metal "swivel" connecting the hose nozzle to the hose separated. This caused the nozzle to separate from the hose, which caused

gasoline to discharge from the hose's open end and spray onto Mohan's clothing. After completing the sale transaction, Mohan walked toward the station's office to change out of his gasoline-soaked uniform. On the way, defendant Johnny Jones (Jones) a "bystander" on the station's premises, lit and threw a match at Mohan, setting his clothing on fire. Mohan was severely burned.

Mohan and Vasa Mohan, his father, sued Exxon and others.[1] Exxon settled with Mohan for $440,000, and Exxon continued its contribution action against Husky Corporation (Husky), which had designed and manufactured the swivel, and Thunder Nozzles, Inc. (Thunder or Thunder Nozzles), which had inspected the station's pumps on October 9, 1987.[2]

On Friday, April 19, 1996, the jury returned its verdict by answering a nine-question verdict sheet. In answer to question nine, the jury apportioned 70% of the liability to Exxon and 30% to Jones. The jury, however, did not answer questions three and four, which addressed Exxon's design-defect claim against Husky.

The jury's verdict was taken by the court clerk. After responding to questions one through eight, excluding questions three and four, the jury foreperson announced the jury's answer to question nine:

COURT CLERK: On question number nine; what amount of liability do you attribute to Husky Corporation?

JURY FORELADY: Oh, percentages?

THE COURT: Yes.

JURY FORELADY: Husky zero.

COURT CLERK: As to Exxon Corporation?

JURY FORELADY: Seventy.

---

[1] Because Mohan was sixteen years old at the time of the accident, he was not barred by the Workers' Compensation Act from recovery for negligence as against his employer. *See N.J.S.A.* 34:15–10.

[2] Jones was never served by Mohan, Exxon or Husky. Shortly before trial, PCS Phosphate (formerly known as Texasgulf, Inc.,) served Jones "with a Summons and Fourth–Party Complaint." However, Jones did not file an answer thereto and did not appear at trial.

COURT CLERK: As to Thunder Nozzles?
JURY FORELADY: Zero.
COURT CLERK: As to Johnny Jones?
JURY FORELADY: Thirty.
COURT CLERK: And, is that verdict unanimous?
JURY FORELADY: Say that again?
THE COURT: Well, that—that's not a verdict. That's—okay, that's all right.
COURT CLERK: You can be seated.

The trial judge then announced:

THE COURT: All right, ladies and gentlemen of the jury, we thank you; we thank you for your time; we thank you for the sacrifices that you've made. The litigants thank you, because they have had an opportunity to fully present to you the facts of this case. We've had an opportunity to analyze those facts, and to resolve the issue.

So, with that you're excused.

After the jury was dismissed by the judge, Exxon's counsel requested an opportunity to see the verdict sheet. He observed that the jury had failed to answer interrogatories three and four. This information was conveyed to the judge, whereupon the trial judge returned to court and noted that the jurors had already been dismissed.

Verdict sheet questions three and four read as follows:

3. Do you find that Husky Corporation's Swivel 1 + 6 design was defective:
    YES: ____ NO: ____
    If your answer is "YES," please proceed to question # 4. If your answer is "NO," please end your deliberations as to Husky Corporation.

4. Was the design defect a proximate cause and substantial factor of Shawn Mohan's injuries?
    YES: ____ NO: ____
    If your answer is "YES," please proceed to question # 5. If your answer is "NO," please end your deliberations as to Husky Corporation.

After an ex parte conversation with Exxon's counsel on Friday, April 19, 1996, the judge decided to "bring back the jury for Monday morning, and let them deliberate on that question of defective design," because "I don't know what their answers would have been to three and four." The judge asked Exxon's counsel to advise Husky's counsel about this.

Thereafter, the judge rescheduled the matter for Tuesday morning, April 23, 1996, at which time the judge noted that he had "reconvened the jury for the purpose of consideration of questions 3 and 4." With only Husky's counsel present in court, the judge gave the jurors the filled-in interrogatory sheet and an unfilled-in copy of that interrogatory sheet, and he asked them "to complete questions 3 and 4 predicated upon the instructions previously given to you by the court," and "to use only the evidence and the instructions of this Court that were given to you on Thursday of last week."

After the jury retired to deliberate, Exxon's counsel entered the courtroom. Thereafter, the jury sent out a note, which (in part) said: "We have answered question 3 and 4. Yes to 3 and no to 4." When the judge indicated that, in response to this note, he intended to have the jury "come out and give [the] verdict," Exxon's counsel requested a sidebar conference, but the judge refused his request, because he wanted to "take the verdict first." The jury returned to the courtroom, and the foreperson announced that the jury had answered "yes" to question three, and that the jury had answered "no" to question four. Following this, the judge again discharged the jury. On May 3, 1996, the judge entered a judgment dismissing Exxon's complaint against Husky, based on the "jury having found no cause for action in favor of defendant Husky Corporation and against Exxon Corporation."

Exxon filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. On May 28, 1996, the judge denied this motion. On July 2, 1996, Exxon filed its notice of appeal.

Although our courts have not addressed the issue of reconvening a dismissed and dispersed jury in the context of a civil case, we have addressed the issue in criminal matters. In *State v. Brandenburg*, 38 *N.J.Super.* 561, 120 *A.*2d 59 (Cty.Ct.1956), the trial court dismissed the jury after it returned a verdict of "not guilty" in a criminal case. After the jury had left the courtroom, some of the jurors complained that the foreman had not an-

nounced the correct verdict. The trial judge reconvened the jury which, after deliberation, announced that "it could not agree on a verdict." On defendant's motion, the trial judge deleted from the trial record the entry reflecting the jury's inability to agree upon a verdict and entered a finding of "not guilty."

The judge concluded that the "words 'the jury is discharged' do not in themselves terminate the case." *Id.* at 563, 120 *A.*2d 59. The critical fact was that the jury had been dispersed. The jury had left the room, and the jurors were no longer in the presence or control of the court. *Id.* at 567, 120 *A.*2d 59.

> To all intents and purposes the jury ceased to be a unit. In the opinion of this court, whether they had contact with others during the interval between discharge and reassembling is immaterial, for they did have an opportunity to do so.
> [*Id.* at 566, 120 *A.*2d 59.]

In *State v. Fungone,* 134 *N.J.Super.* 531, 342 *A.*2d 236 (App.Div. 1975), *certif. denied,* 70 *N.J.* 526, 361 *A.*2d 540 (1976), we relied on the reasoning of the court in *Brandenburg* in overturning a verdict which was based, in part, on a discharged jury being reconvened to determine the value of a vehicle which was the subject of a larceny conviction. We noted:

> The essential factor in determining whether a discharged jury can be reassembled in order to further deliberate or report on verdict already reached is whether it has dispersed, left the jury box or courtroom, and has had an opportunity to mingle with court attendants, other jurors, or third persons. The fact that the court has announced the jury's discharge will not foreclose subsequent proceedings by the jury if its members have remained in the jury box or otherwise within the continuous control of the court.
>
> . . . .
>
> In the present case there is no question but that the jury dispersed. They were reassembled on the morning following their discharge. Clearly, in these circumstances the efforts of the trial judge to correct the defective verdict was of no avail.
> [*Id.* at 535–36, 342 *A.*2d 236.]

■ The operative element in determining when and whether a jury's functions are at an end is not when the jury is told it is discharged but when the jury is *dispersed,* that is, has left the jury box, the court room or the court house and is no longer under the guidance, control and jurisdiction of the court. This clearly is the rule in criminal cases; there is no reason why the same rule

should not apply in civil cases as well. Our focus is not limited to the issues to be decided by the jury. Our objective is to insure the integrity of the jury system. Whether the issues before the jury are civil or criminal in nature, the admonitions of the trial judge restrict jurors' conduct while they are within the jurisdiction and control of the court even when the jurors are dispersed during deliberations. *See Pessini v. Massie,* 115 *N.J.Super.* 555, 280 *A.*2d 499 (Law Div.1971), *aff'd sub nom. Eberhardt v. Vanarelli,* 121 *N.J.Super.* 293, 296 *A.*2d 666 (App.Div.1972); *R.* 1:8–6(b) ("[f]ollowing the instructing of the jury by the court and during deliberations, the court may, in its discretion, in both civil and criminal actions, permit the dispersal of the jury for the night, for meals, and during other authorized intermissions in the deliberations."). This is markedly different from jurors who have been discharged from their responsibilities as jurors and now return to society to resume their normal lives unfettered by restriction or limitation imposed by the court.

Other jurisdictions have addressed the issue in the context of a civil case. In *Nails v. S & R, Inc.,* 334 *Md.* 398, 639 *A.*2d 660 (1994), the trial court, after the jury had rendered a verdict but not yet left the jury box, submitted a supplemental verdict sheet for consideration. The Maryland Court of Appeals concluded that "in a civil case, after a jury has rendered an initial verdict, the trial judge ordinarily may ask the jury to amend, clarify or supplement the verdict in order to resolve an ambiguity, inconsistency, incompleteness, or similar problem with the initial verdict, up until the jury has been discharged *and has left the courtroom." Id.* 639 *A.*2d at 667 (emphasis added). *See also Sierra Foods v. Williams,* 107 *Nev.* 574, 816 *P.*2d 466 (1991) (recognizing the general rule that a trial judge may not reconvene a jury once it has been dismissed, but since the jury had not left the courthouse it was under the *de facto* control of the court); David J. Marchitelli, Annotation, *Propriety of Reassembling Jury to Amend, Correct, Clarify or Otherwise Change Verdict After Discharge or Separation at Conclusion of Civil Case,* 19 *A.L.R.*5th 622, 648 (1994).

■ Once the jury is beyond the control of the court and relieved from the adherence to and strictures of court instruction, the jury is no longer a functioning entity capable of resurrection at the call of a judicial officer. We do not consider it of any moment that individual jurors may not have discussed the case with anyone or been subject to improper or any influences. We are mindful of the admonition set forth in *Summers v. United States,* 11 *F.*2d 583 (4th Cir.), *cert. denied,* 271 *U.S.* 681, 46 *S.Ct.* 632, 70 *L. Ed.* 1149 (1926), where the court noted:

> The duties of a jury ordinarily are presumed to be at an end when its verdict has been rendered, received, and published. If thereupon, with or without further positive direction of the court, it is allowed to disperse and mingle with the bystanders, with time and opportunity for discussion of the case, whether such discussion be had or not, the discharge of the jury becomes final, and its functions are at an end.[3]

> *[Id.* at 586.]

■ In the present case, not only was the jury dispersed, it was beyond the control and instruction of the trial judge for a period of four days. We conclude that the jury determination as to questions three and four were *ultra vires* and cannot serve as the basis for a resolution of the issues presented by those questions. We further conclude that the matter must be retried as to those issues only and the case will be remanded for that purpose. Obviously, if the jury on retrial, answers the questions in the affirmative, then

---

[3] In deciding a related issue of whether the failure to answer written interrogatories invalidated a general verdict, we affirmed the trial court's denial of a motion for a new trial. *Bree v. Jalbert,* 91 *N.J.Super.* 38, 219 *A.*2d 178 (App.Div. 1966), *aff'g* 87 *N.J.Super.* 452, 209 *A.*2d 836 (Law Div.1965). Judge Botter, then sitting in the Law Division, alluded to the inherent danger of reconvening a dispersed jury:

> If the claim of error had been timely made known to the court, the court could have taken steps to cure the alleged error.... When the court, without objection, has accepted a general verdict despite unanswered interrogatories the jurors, who have returned to the community at large, should not be recalled for examination on the basis for their verdict.

[87 *N.J.Super.* at 478, 209 *A.*2d 836.]

*Cf. Roland v. Brunswick Corp.,* 215 *N.J.Super.* 240, 521 *A.*2d 892 (App.Div. 1987) ("[T]he jury had a right so to reconsider and correct its own verdict while the matter is still before it.").

the liability of the tortfeasors must be apportioned, so that to the extent the new trial requires proofs as to the liability of Exxon and Jones, proofs may be adduced as to their liability as well.

We comment on an additional matter. In both the jury charge and special interrogatories, the trial judge joined "proximate cause" and "a substantial factor" conjunctively ("[w]as the design defect a proximate cause *and* a substantial factor of Shawn Mohan's injuries?"). On the retrial, and to avoid any confusion, the jury instruction and written interrogatories should refer to either "proximate cause" *or* "a substantial factor." *See, e.g., Model Jury Charges (Civil),* 8.20(D), "Comparative Negligence: Proximate Cause."

Exxon raises additional claims of trial error which we have carefully reviewed. After consideration of the entire record, we conclude that the claims are without merit. *R.* 2:11–3(e)(1)(B) and (E).

Reversed and remanded for a new trial in accordance with this opinion.