OPINION OF THE COURT
Edward M. Horey, J.
The issues arising in an automobile negligence case were submitted to the jury by way of a special verdict following a three-day trial at a term of Supreme Court, Cattaraugus County, on February 18, 1983.
The findings of five sixths of the jury were that the plaintiff, William Aiello, did sustain a serious injury within the meaning of section 673 of the Insurance Law on two separate counts, viz., a significant limitation of use of a bodily function and disability for at least 90 out of the 180 days immediately following the injury. Juror number 6 dissented to both findings.
On the issues of negligence and contributory negligence, five sixths of the jurors found the defendant negligent, juror number 3 dissenting. On the issue of contributory negligence, five sixths of the jury found the plaintiff contributorily negligent, juror number 4 dissenting.
The percentage of the defendant’s negligence was determined to be 35% by five sixths of the jury, with juror number 3 dissenting. The percentage of the plaintiff’s negligence was determined to be 65% again with juror number 3 dissenting.
*1069 The total amount of damages of the plaintiff, William Aiello, without consideration of fault was determined to be $2,500, juror number 6 dissenting.
The answer to the interrogatory of whether or not the plaintiff, Patricia Aiello, sustained any damage on her derivative cause of action for loss of her husband’s services, was a unanimous “no” on the part of all six jurors.
On the finding of the jury, the court directed the entry of a judgment in favor of the plaintiff, William Aiello, for $875 and further directed the entry of a judgment of no cause of action in favor of the defendant on the action of Patricia Aiello.
Wholly dissatisfied with the results, the attorney for the plaintiffs moved to set the special verdict of the jury aside as to the plaintiff’s contributory negligence as being “incredible”, against the weight of evidence and inconsistent. Plaintiff further moved to set the findings of damages for the plaintiff, William Aiello, aside as inadequate. Finally, plaintiff moved to set the findings of no damages to the plaintiff’s wife, Patricia Aiello, aside as being incredible as a matter of law, inconsistent and inadequate. The court reserved decision.
Plaintiffs then in accordance with the provisions of CPLR 4404 through 4406 brought on the matters urged orally by a written notice of motion.
While plaintiffs charge several errors their principal attack is directed to the voting pattern of juror number 4. That juror did not join the other five jurors in their finding that the plaintiff was negligent. Yet that juror, number 4, was one of the five jurors who participated in the determination of comparative negligence and found the defendant 35% negligent and the plaintiff 65% negligent.
The principal contention of the plaintiff is that the inconsistent voting pattern of juror number 4 requires the verdict to be set aside and a new trial ordered.
Necessary to a proper consideration of the plaintiffs’ arguments on this motion are the following foundational facts.
First, the case was submitted to the jury for a special verdict. If one considers a verdict as a declaration by a jury *1070 of a finding in favor or against a party, the term special verdict is a misnomer. This is for the reason that “[a] special verdict is one in which the jury finds the facts only, leaving the court to determine which party is entitled to judgment thereon”. (See definition in CPLR 4111, subd [a].)
While the submission of a case to a jury for a special or general verdict lies within the discretion of the Trial Judge under the provisions of CPLR 4111 (subd [a]), in the instance in question, the case was submitted for a special verdict with the concurrent agreement of both the attorneys for the plaintiffs and the defendant. All interrogatories submitted by the court to the jury were reviewed by the attorneys in a conference with the court in advance of the court’s charge. With a minor revision to one of the interrogatories they were then approved by the attorneys. There was no exception or objection ever made to a special verdict submission, nor to the interrogatories that formed that submission. Upon the return of the jury the court directed the completed interrogatories to be marked as exhibits of the court and preserved as a part of the record.
The reason which prompted the court to submit the case to the jury for a special verdict was attempted compliance with the direction made in Noga v Monroe Medi-Trans (78 AD2d 988). There the Fourth Department, Appellate Division, after acknowledging the discretion granted the trial court under CPLR 4111 (subd [a]) stated (p 988), nonetheless, that in an action in which comparative negligence was involved “trial courts should direct the jury to return either a special verdict (CPLR 4111, subd [b]) or a general verdict accompanied by answers to interrogatories (CPLR 4111, subd [c]) to permit more precise appellate review”. The instant motion points up one of the hazards which can flow from special verdicts or general verdicts with interrogatories.
Secondly, there is no legal inconsistency in the answers which the jury collectively made to the interrogatories. In the opinion of the court, nothing is more important to note than that any inconsistency in the special verdict in issue lies in the inconsistent vote of one juror and not in the collective vote of five sixths of the jury membership on the *1071 questions submitted. It is this feature which makes the case for decision unique and one of first impression.
Here, five of the six jurors were in agreement on all issues submitted, except one. As to that one, which related to the derivative action of the plaintiff wife, all six jurors were unanimous in awarding her no damages.
We note again for emphasis, there was no internal legal inconsistency in the answers given by the jury to the interrogatories submitted. Those answers formed a perfect pattern for the entry of judgment by the court in favor of the plaintiff, William Aiello, for $875. Such judgment was premised on the jury’s determination that his injury was a serious injury within the meaning of section 673 of the Insurance Law. The defendant was found negligent. The plaintiff was found contributorily negligent. The determined percentage of negligence was 65% on the part of the plaintiff and 35% on the part of the defendant. The total damages of the plaintiff, without consideration of fault, were determined by the jury to be $2,500. As a consequence, the court directed entry of a judgment in favor of the plaintiff, William Aiello, and against the defendant for $875.
Similarly, in connection with the derivative action of the plaintiff wife, Patricia Aiello, the jury’s answers to the interrogatories were consistent. The jury’s determination that she sustained no damages formed a consistent legal pattern for the entry by the court of a judgment by the court in favor of the defendant and against the plaintiff of no cause of action.
The brief submitted by the attorney for the plaintiffs was comprehensive and helpful. Between the authorities cited in that brief and others discovered by the court in its research, the court is reasonably satisfied that the applicable decisional law of New York has been reviewed.
Of the several cases reviewed, this court has found only two that involve a submission to the jury by way of a special verdict. All of the other cases cited or discovered involve a submission to the jury for a general verdict or a submission to the jury for a general verdict with accompanying interrogatories.
*1072 The first case involving a special verdict submission to a jury was Orens v Secofsky (60 AD2d 866). There, as in the case at bar, the issues were presented to the jury as a special verdict with requirement only that the jury answer and sign written interrogatories. There too, as in the instant case, a different juror dissented on the questions presented. The court noted that five sixths of the jurors had answered in the affirmative to a question of whether one defendant was negligent, but had answered in the negative a question of whether that defendant’s negligence was a proximate cause of the accident. Stating (p 867) that the inconsistency was a “disquieting factor”, the court determined that the special verdict would, nonetheless, stand as given by the jury. In doing so, the court observed that the parties had stipulated to the submission of written interrogatories and thus, the court stated (p 867), they had “charted their own course”.
For the purpose of the motion at hand, it is important to note that Orens v Secofsky (supra) stands four square for the proposition that a special verdict by the jury is to stand, not only despite inconsistent answers on the part of an individual juror, but more particularly, it is to stand despite internal legally inconsistent answers given to the interrogatories by five sixths of the jurors.
The second case that involved a special verdict submission was Nallan v Helmsley-Spear, Inc. (50 NY2d 507). This case was decided by the Court of Appeals two years after the decision of the Second Department in Orens v Secofsky (supra). The case affords insight to the problem at hand. It turned on a legally internal inconsistency in the answers which the jury made to the interrogatories submitted. The inconsistency was that the jury had found that there was no foreseeability, but had also found that the defendant’s negligence was the proximate cause of the plaintiff’s injuries. Of these findings, the court said (p 518): “The difficulty is that it was logically impossible for the jury to find that foreseeability was lacking in this case while, at the same time, finding that defendants’ negligence was the proximate cause of plaintiff’s injury, because * * * foreseeability is an essential element of negligence”.
*1073 Because there was such internal legal inconsistency in the answers which the jury had made to the interrogatories submitted, the court held that a new trial was required. However, in making the decision for a new trial, the court stated that if the internal legal inconsistency had been discovered in sufficient time, the remedy would have been by way of reconsideration by the jury and this despite the fact that CPLR 4111 (subd [c]) contemplates resubmission only in the instance of a general verdict, or a general verdict with interrogatories. (See 50 NY2d 507, 518, supra, inclusive of n 5.)
In the opinion of this court the conclusion to be drawn from Nallan v Helmsley-Spear, Inc. (supra) is that in a special verdict if the answers to five sixths of the jurors to interrogatories are legally irreconcilable they cannot stand. They must either be resubmitted to the jury for correction or a new trial ordered. It is to this limited extent only that Nallan v Helmsley-Spear, Inc. overrules Orens v Secofsky (supra). Otherwise the determinations made in that case, viz., findings made by a jury upon a special verdict stand if determined by five sixths of the jurors.
The holding of this court is that the test for a special verdict should be and is internal legal consistency in the answers made by five of the six jurors regardless of which jurors comprise the five who are in agreement on the answers. It should not be and is not legal consistency in the answers made by an individual juror.
Turning to the case at bar the conclusion of this court is that no remedy to the special verdict is necessary or proper. It should stand as it was determined by the jury. This is for the primary reason that the answers made by five sixths of the jurors were reconcilable and contained no internal legal inconsistency.
In support of the determination reached, note is first made that New York Pattern Jury Instructions recently added a suggested charge to the jury for a special verdict. It is contained in the 1982 Cumulative Supplement to volume 1, second edition, and is set forth as PJI 1:97. It provides, in relevant part, as follows:
*1074 “PJI 1:97. General Instructions — Special Verdicts
“This case will be decided by me on the basis of the answers that you give to certain question[s] which I am going to submit to you. Each of the questions asked calls for [Insert appropriate phrase, such as: (a ‘Yes’ or ‘No’ answer), (some numerical figure), (some percentage), etc.] Five of the six of you must agree on the answer to any question, but the same five persons need not agree on all of the answers. When five of you have agreed on any answer, the foreman of the jury will write the answer in the space provided for each answer and each juror will sign in the appropriate place to indicate his agreement or disagreement * * *
“When you have answered all the questions which require answers, report to the court.” (Italics added.)
The timeliness of the addition and the distinction of its authors commend the charge to this court’s consideration.
The instruction given by this court to the jury in its charge, while not a verbatim recitation of the pattern charge, was clearly for a special verdict and wholly consistent with the pattern charge. The jurors were instructed to do nothing but to answer the interrogatories submitted to them in writing; when any five jurors were in agreement they were to sign their names to each answer given with any one dissenting juror to sign his name and the jury was instructed to then return the signed written interrogatories to the court. No exception to this portion of the charge was made by the attorneys, nor was any request made in reference to it.
Clearly the pattern instruction states that the same five jurors need not agree on all of the answers. The plaintiffs disagree with that proposition. Thus, a decision in favor of the plaintiffs on this motion necessarily requires the determination that PJI 1:97 is wrong. This court believes it to be a proper statement of the law.
Supportive of the court’s opinion is the fact that too many variables can explain the inconsistency of the vote of an individual juror. Because the verdict of an individual juror is inconsistent does not necessarily mean that such juror’s individual vote is illogical or capricious. As Justice *1075 Di Paola has cogently observed in a situation similar to that presented on this motion, “[t]he appropriate assumption in a case such as this is that when a juror is outvoted on the question of liability he will accept the outcome and continue to deliberate with the other jurors honestly and conscientiously to decide the remaining issues”. (Forde v Ames, 93 Misc 2d 723, 725.) Absent specific instructions to the contrary, this court finds such action by the juror to be wholly in keeping with his oath.
Also supportive of the court’s opinion is the consideration that if the case in issue had been submitted to the jury for a general verdict, without accompanying findings of fact, the rationale of that one juror, which is now complained of, would not have changed. Any inconsistency in reasoning would have been merged in the general verdict which the jury would have reported to the court. In the opinion of the court, such a verdict would stand even if one juror subsequently made an affidavit detailing the inconsistency of his considerations which are now disclosed by his vote on the question submitted. This is because the general rule is that affidavits of jurors relating to their deliberations are not competent to impeach the verdict nor to form a basis of a motion to set the verdict aside. (Payne v Burke, 236 App Div 527 [a leading case]; Glessner v Lafayette Post No. 37 of Amer. Legion, Dept. of N. Y., 50 Misc 2d 1059 [with extensive review of precedent], affd without opn 28 AD2d 648.) Why should the result be different simply because it is submitted in the form of a special verdict instead of a general verdict? Professors Siegel and McLaughlin raise substantially the same question. (See, respectively, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, 1964-1982 Supp Pamph, CPLR 4113, and 22 Syracuse L Rev 55, 87 et seq.)
In the same vein, if the issues of serious injury, negligence, comparative fault and damages had been separately submitted to the jury for determination, the dissenting vote of one juror on one issue would not have disqualified that juror from voting on the other issues. (Forde v Ames, 93 Misc 2d 723, supra; Murphy v Sherman Transfer Co., 62 Misc 2d 960, 961; Ward v Weekes, 107 NJ Super 351; Naumburg v Wagner, 81 NM 242; and, most recently, *1076 Bichler v Lilly & Co., 79 AD2d 317.) The fact that the cited cases dealt with bifurcated trials is no basis for distinction. The principle of independent determination of severable issues by jurors decided in the recited cases would be equally applicable to trifurcated or quadfurcated trials, or, in truth, to trials in which any number of issues were separately submitted.
There is a practical consideration that supports the decision which has been reached as well. It is this: the adoption of a rule which will tend to reduce rather than increase errors.
An example may be helpful. Common to most Supreme Court calendars today are product liability cases. Often these are pleaded and must be submitted for jury consideration on several theories, e.g., negligence, breach of express warranty, breach of implied warranty and strict liability. Typically the original manufacturer, the wholesaler and the retailer are parties defendant. Typical also are the cross claims between the parties defendant: Rarely does one escape having a Dole v Dow charge to apportion fault among the defendants. Comparative fault is involved between the plaintiff and defendant. As the theories mount, and the parties increase, the issues for determination by the jury grow and grow, not always it seems in geometric proportion, although that would be sufficient for the point made, which is this: the possibilities for legally inconsistent answers by five sixths of the jurors are numerous and difficult enough for a Trial Judge to review; but to add the chore of determining inconsistencies in the votes of individual jurors would be monumental if not practically impossible. Computers are not yet a part of judicial paraphernalia. Thus, reporting jurors will be kept waiting for hours if not days, while the results of their determinations are reviewed for consistency in legal thought pattern — a requirement which incidentally does not obtain among the judiciary. Witness the difference in decisions on issues at the trial level and the dissents in the appellate courts.
In these days of already congested calendars with ever-increasing litigation the adoption of a practical and workable rule is essential. A requirement of legal consistency on the part of each individual lay juror is not such a rule.
*1077 This court does not find the case of Murphy v Sherman Transfer Co. (62 Misc 2d 960, supra) to be contrary to the opinions given and decision reached. There, the case was submitted to the jury for a general verdict and a general verdict in favor of the plaintiffs was reported by the jury. It was only in polling the jury that it was discovered (p 961) that “2 jurors ‘split’ their votes thereon, i.e., one of them found defendants not negligent, but agreed as to the amount of damages to be awarded the plaintiff wife and the other found defendants negligent but did not agree as to the amount to be awarded her”.
Holding (p 961) that a general verdict was an indivisible entity and that no “ ‘tenth’ ” juror could be found who had agreed on both the essential elements of liability and damages, the court set the verdict aside and ordered a new trial.
What is important to note is that the court stated (p 961) that “[t]he situation might have been different if the issues of liability and damages had been, by order, tried separately (see CPLR 603). Then, any 10 jurors making for a valid verdict need not be the same with respect to each of their votes on the separated issues of liability and damages.”
In the special verdict submitted to the jury in the case at bar, the issues were submitted separately to the jury and were determined separately by the jury. A separate trial on each issue would have resulted in nothing more or less than asking the jury to decide on one issue, report to the court with its answer, and then submit a second issue for determination and when that was done, repeat the process until all issues had been answered. Such a procedure would have accomplished nothing, except the expenditure of time and wasted effort on the part of the Judge, jury, parties, attorneys and court personnel. For all practical purposes, the individual issues were tried separately and the case at bar falls within the exception noted and conceded in Murphy v Sherman Transfer Co. (supra).
Further the decision in Murphy v Sherman Transfer Co. (supra) appears to have been later overruled by the First Department, Appellate Division, in Bichler v Lilly & Co. *1078 (79 AD2d 317, supra). There in a submission to a jury for a general verdict with written interrogatories, the votes of dissenting jurors were inconsistent with their votes on the general verdict precisely as was the case in Murphy v Sherman Transfer Co. Without mentioning that case, the general verdict of the jury was nonetheless determined (p 336) to be valid and constitutional.
Plaintiffs strenuously urge that the case of Cohen v Levin (110 Misc 2d 464) is contrary to the decision which has been reached. This court does not agree.
Cohen v Levin (supra) involved a general verdict with written interrogatories. It was only upon polling the jury that an inconsistency in the vote of individual jurors was discovered.
While concededly factually analogous to the case at bar, there are three important distinctions.
First, in its charge to the jury, the court in Cohen v Levin (supra, p 465) had specifically instructed the jury that before it could report its verdict “at least five jurors had to agree, and that it had to be the same five jurors in agreement as to all of the issues.” (Italics added.)
Secondly, the issues in Cohen v Levin (supra) were submitted to the jury for a general verdict with interrogatories.
Thirdly, the jury in Cohen v Levin (supra) clearly acted contrary to the court’s instruction.
In contrast, in the case at bar, there was no special instruction by the court requiring consistency in voting on the part of each juror on all issues. Further, the matter was presented, in the instant case, to the jury as a special verdict. This was done without objection or exception but with the consent of the attorneys for the parties.
Finally, in the case at bar, the jury meticulously followed the court’s instruction.
While one may quarrel with the propriety and legality of the charge which the court gave to the jury in Cohen v Levin (supra; see to the contrary “Verdict With Written Interrogatories” charge, PJI 1:96; Bichler v Lilly & Co., 79 AD2d 317, 336, supra, and cases there cited), no one can *1079 quarrel with the obligations of the jury to follow the court’s instruction. It was part of their oath that they do so. They failed in their obligations and the court took steps to correct their failure. This court regards this as a major difference to the case at bar.
In certain respects Cohen v Levin (supra) is similar to the case of Ashdown v Kluckhohn (62 AD2d 1137), wherein the court held that the attorney objecting to a determination made by less than all the jurors was bound by the instructions which he had requested of the court.
Upon the plaintiffs’ oral argument this court sought to draw a distinction between errors in a special verdict in contrast to errors in a general verdict with accompanying interrogatories. This was apparently to no avail as the court is satisfied counsel for plaintiffs did not understand it.
That distinction is now repeated because in the opinion of the court it has very practical repercussions. The distinction is this: in a general verdict with written interrogatories three inconsistent results may obtain. First the answers given by five sixths of the jurors may be consistent with each other but inconsistent with the general verdict which the jury reported. Secondly the answers given by five sixths of the jurors may be inconsistent. Thirdly the answers given by an individual dissenting juror may be inconsisteht.
In contrast in a special verdict only the last two possibilities are at hand. There can be no answers given by five sixths of the jurors that are inconsistent with a general verdict given by the jury. This is for the simple reason that the jury does not report a general verdict upon which judgment is to be entered. That is the function of the court in a special verdict. Thus the employment of a special verdict substantially decreases the percentage of possible inconsistencies on the part of the jurors and hence decreases the possibilities of error in the trial. Quite frankly it is that factor which has persuaded this court to adopt the device of special verdict submissions over submissions for a general verdict with interrogatories.
Turning to the first of the two possible inconsistencies which can prevail in a special verdict submission, viz., that *1080 the answers given by five sixths of the jurors are inconsistent. In such even this court repeats its opinion that such answers cannot stand if they are legally irreconcilable. This is often phrased as a situation where the answers are legally internally inconsistent. (E.g., a determination that the defendant was negligent accompanied by a determination that such negligence was not a proximate cause of the plaintiff’s injuries.) This court also repeats its determination and the holding made in the instant case, viz., if the answers of five sixths of the jurors are legally consistent, they stand as the jury’s special verdict.
Thirdly and finally the court repeats its determination and the holding made in the instant case that any inconsistency in the voting of an individual juror whether legally reconcilable or not is to be ignored.
If the three distinctions which this court has made between the case at bar and the decision made in Cohen v Levin (supra) are determined to be without sufficient merit, then with all deference to Justice Lonschein and what is concededly a well-reviewed decision (i.e., Cohen v Levin), this court simply but respectfully disagrees that it states either what the law of this State is or should be.
[Portions of decision omitted for purposes of publication.]