LINDA WILLIAMS, PLAINTIFF, v. VICKI C. JAMES, JESSE B. JAMES, AND CYNTHIA A. HENRY, DEFENDANTS AND THIRD–PARTY PLAINTIFFS, v. COUNTY OF UNION AND CITY OF PLAINFIELD, THIRD–PARTY DEFENDANTS.

CYNTHIA HENRY, PLAINTIFF–APPELLANT, v. SHOP–RITE OF WATCHUNG, DEFENDANT–RESPONDENT, AND VILLAGE SUPERMARKET, INC., VICKI JAMES, JESSE JAMES, JADE ISLE RESTAURANT, JADE ISLE, INC., AND XYZ CORP. (NAME BEING FICTITIOUS), DEFENDANTS.

Argued October 25, 1988—Decided January 30, 1989.

Herbert J. Kessler argued the cause for appellant (*Kessler &
DiGiovanni*, attorneys; *Vincent Jesuele*, on the brief).

*Stanley P. Fishman* argued the cause for respondent
(*Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman,
Franzblau & Falkin*, attorneys; *Stanley P. Fishman* and
*Thomas Hendrickson*, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This appeal involves a personal injury-negligence case tried
before a six-member jury, which by a vote of five to one
returned a verdict of no-cause for action against the plaintiff.
The Court is asked to decide whether a juror who voted that
neither party was at fault and thus disagreed with the majority
of jurors on the issue of negligence could nevertheless subse-
quently deliberate and vote on the issue of how to allocate
percentages of fault between the parties for purposes of appor-
tioning damages.

The case was initiated by an action brought by the plaintiff,
Cynthia Henry, against defendants, Shop–Rite of Watchung,
Vicki James, and Jesse James. The claims against Shop–Rite
stem from a fall on the store's premises in July 1984 and the
claims against Vicki and Jesse James arose from an automobile
accident in June 1985. The trial court severed the claims and
ordered that the action against Shop–Rite be tried first. The
liability and damages issues were then bifurcated and the initial
trial was limited to the issue of liability. At the conclusion of
the trial, the court submitted a form to the jury to guide its
deliberations and record its verdict. It contained the following
questions:

1. Was the defendant, Shop-Rite, negligent, which negligence was the proximate cause of the injuries sustained by the plaintiff?

Yes ___ No ___

Vote ___

2. Was the plaintiff, Cynthia Henry, negligent, which negligence was the proximate cause of her injuries?

Yes ___ No ___

Vote ___

3. What percentage of fault do you attribute to:

A. Shop-Rite _____ ___
B. Cynthia Henry _____ ___

Vote ___

In its instructions to the jury, the trial court charged the jurors that they could vote inconsistently on the three questions contained in the verdict form. The court stated:

> By the way, you can vote inconsistently no matter which way you voted in Question No. 2. You can vote anyway. Each question is a separate issue. Don't think you're bound because you've voted one way in a previous question and you can't vote on the next one, or you must vote consistently.

The jury returned a verdict answering questions one and two in the affirmative and then, in answer to question three, apportioned fault by attributing forty-nine percent of fault to the defendant Shop–Rite and fifty-one percent to the plaintiff. All three answers were agreed on by a five-one vote. The apportionment of more than fifty percent of fault to the plaintiff barred her recovery against the defendant.

The jury was polled pursuant to *Rule* 1:8–10. The poll revealed that Juror Number Two, Lisa Joyner, cast the negative vote on the first two questions concerning negligence and Juror Number Six, Henry Pastor, cast the dissenting vote on the apportionment of fault question. Joyner thus voted that neither the plaintiff nor the defendant was negligent, yet voted to attribute fifty-one percent of the fault to the plaintiff.

In a motion for a new trial, plaintiff claimed that the jury verdict was inconsistent because Joyner's vote on apportion-

ment of fault contradicted her votes on the negligence issues. Because of this inconsistency, plaintiff alleged Joyner's vote on apportionment should have been disregarded, the effect of which would have been to reduce the jury's apportionment of fault vote to a margin of four-to-one. This would invalidate the comparative fault determination because jury verdicts cannot constitutionally be returned by less than a five-sixths vote. *N.J. Const.* of 1947 art. I, para. 9. The trial court denied plaintiff's motion. On appeal, the Appellate Division affirmed. This Court granted certification. *Henry v. Shop–Rite of Watchung,* 111 *N.J.* 569 (1988).

### I.

Plaintiff contends that in this case a juror's determination that neither plaintiff nor defendant was negligent is logically inconsistent with the same juror's subsequent determination to apportion fault between the parties attributing forty-nine percent and fifty-one percent of fault to the defendant and plaintiff respectively. According to the plaintiff, once the juror determined that neither party was at fault and voted against a finding of negligence for both parties, she should have been precluded from thereafter deliberating and voting on the apportionment-of-fault issue. Had she been disqualified, this would have left only five jurors to consider the question of the apportionment of fault and, since only four other jurors agreed on the allocation of fault between the parties, the final verdict was invalid, because it was based on a vote of less than five-sixths of the jurors.

In addressing this contention, both the trial court and the Appellate Division placed considerable emphasis on *Ward v. Weekes,* 107 *N.J.Super.* 351 (App.Div.1969). In that case, the plaintiff sued the defendants for personal injuries. The jury rendered a verdict in his favor. However, when polled, two jurors stated that they agreed with the verdicts on liability, but not on the amount of damages awarded; two different jurors

disagreed with the verdicts on liability yet agreed with the damages awards. The verdicts were therefore supported by a ten-two vote, yet the same ten jurors were not in agreement on all of the issues. The Appellate Division there held that the final verdict satisfied the constitutional five-sixths vote standard and was not invalid. It reasoned that there was nothing in the New Jersey Constitution, statutes, or rules requiring that all issues in a case be decided by the same jurors, noting that "[w]e must assume that the framers of the 1947 Constitution, the Legislature and the Supreme Court realized that 'a verdict' is a single final decision of a jury on all the factual issues submitted to it by a court for determination." *Id.* at 353 (citing *Andres v. United States,* 333 *U.S.* 740, 68 *S.Ct.* 880, 92 *L.Ed.* 1055 (1948)). The *Ward* court also believed that its determination was consistent with the policies advanced in the enactments that dispensed with the unanimity requirement in civil verdicts, namely, to overcome unjust results caused by obdurate jurors and to increase the economies of litigation by the elimination of avoidable mistrials and the reduction of court congestion and trial delays. *Id.,* 107 *N.J.Super.* at 356.

The *Ward* decision did not then represent the majority approach on the issue of the validity of a non-unanimous verdict in which a juror had taken apparently inconsistent positions involving subsidiary issues. The approach then followed by most courts generally required that the same jurors had to agree on all issues or the resultant verdict was invalid. *See* Case Comment, "Vote Distribution in Non–Unanimous Jury Verdicts," XXVII *Wash. & Lee L. Rev.* 360, 362 n. 14, 363 (1970) (hereinafter Case Comment) (approach was known as the "Wisconsin rule" since Wisconsin statutorily required the same jurors to agree on all issues). The Wisconsin rule is premised on the historic common-law requirement of unanimity in jury verdicts. *Id.* at 363. This philosophy of unanimity assumed that a verdict is a "non-fragmentable totality," incompatible with the notion that different fractional groups can differ on essential issues that make up an overall verdict. *Id.* Such a verdict was

"the expression of the concurrence of individual judgments, rather than the product of mixed thoughts." *Id.* (citing *State v. Bybee*, 17 *Kan.* 462, 467 (1877)). The traditional principle of unanimity was perceived to be applicable not only to the final verdict, but also to the determinations of essential facts underlying the final verdict. *Id.*, 107 *N.J.Super.* at 364. However, even courts that adhered to the Wisconsin rule permitted nonessential issues to be determined by different fractional groups of jurors. *Id.* at 364 nn. 24–26.

The Wisconsin approach was seen as "an attempt to maintain the semblance of unanimity after the requirement of unanimity ceases to exist." *Naumberg v. Wagner*, 81 *N.M.* 242, 465 *P.*2d 521, 524 (N.M.Ct.App.1970). The *Ward* approach reflects a different philosophical underpinning that regards juror unanimity as dispensable. It gained acceptance in several jurisdictions, particularly in response to legislative enactments that dispensed with the common-law requirement of unanimity. *See, e.g., Naumberg v. Wagner, supra*, 81 *N.M.* at 247, 465 *P.*2d at 524 (in contributory negligence case any ten jurors could agree on any issue; a juror who found both parties negligent could not be barred from participating in the assessment of damages); *Forde v. Ames*, 93 *Misc.*2d 723, 401 *N.Y.S.* 2d 965 (N.Y.Sup.Ct.1978) (same five jurors did not have to agree on the issues of liability and damages); *Fields v. Volkswagen of America, Inc.*, 555 *P.*2d 48 (Okla.1976) (in bifurcated trial, the same ten jurors did not have to return a verdict on liability and damages).

The *Ward* approach assumes that juror consistency, to the extent it may be a corollary of unanimity, is not an indispensable condition in jury determinations when unanimity is itself not crucial. Other concerns that focus on full and complete deliberations and the effective participation of all jurors in the deliberative process are considered more important than unanimity. The integrity of the jury deliberative process and the ultimate verdict need not be impugned by apparent logical inconsistency on subsidiary issues provided this did not other-

wise evidence confusion, mistake, bias, and the like. More important than consistency as such is the effective involvement of all jurors in all important issues. *See, e.g., Forde v. Ames, supra,* 93 *Misc.*2d at 725, 401 *N.Y.S.*2d at 967 (even though some jurors might take inconsistent positions this would not be unfair "because six jurors must still participate in arriving at a conclusion as to each ultimate issue, *i.e.,* negligence, contributory negligence and, if necessary, damages.").

Thus, the perception of the general verdict as the "indivisible residuum of all matters" changed substantially with the abolition of the unanimity requirement as well as by the introduction of bifurcated trials. Hence, courts following the *Ward* approach have concluded that the same jurors do not have to vote consistently on each separate issue or special verdict. *See, e.g., McChristian v. Hooten,* 245 *Ark.* 1045, 1054, 436 *S.W.*2d 844, 849 (1969) (finding that each answer represents a separate verdict on a particular issue of fact); *Tillman v. Thomas,* 99 *Idaho* 569, 585 *P.*2d 1280 (1978) (special verdict not invalid where same juror in applying *respondeat superior* exonerates employee and imposes liability on employer, provided majority agrees on each response). The case of *Schabe v. Hampton Bays Union Free School Dist.,* 103 *A.D.*2d 418, 480 *N.Y.S.*2d 328 (N.Y.Sup.Ct.1984), is illustrative of this point. In *Schabe,* a special verdict form containing seven questions was submitted to the jurors. The first six questions dealt with the issue of proximate causation, and the seventh asked the jury to apportion liability between the parties. After a verdict for the plaintiff, a jury poll disclosed that the identical five jurors had not agreed on the specific questions. The court held that the special verdict was valid, stressing the strong public policies of reducing mistrials and retrials and diminishing confusion for courts and jurors. *Id.,* 103 *A.D.*2d at 423, 480 *N.Y.S.*2d at 333. The court further acknowledged the importance of having all members of the jury participate fully in the disposition of a case, observing that under the contrary same-five rule "the casting of a dissenting voice on any question[s] reduces the dissenter's in-

fluence to a state of practical impotence and creates a mandate for continued unanimity among the other jurors on the remaining questions if the verdict is to survive." *Ibid.*

An argument against the *Ward* rule is that it cannot apply to issues posing a conflict between liability and apportionment of fault because these issues are conceptually and logically inseparable. Thus, in *Cohen v. Levin,* 110 *Misc.*2d 464, 442 *N.Y.S.*2d 851 (N.Y.Sup.Ct.1981), the court held that a jury verdict was invalid where one of six jurors voted against liability for one defendant but voted to apportion some liability to the same defendant. According to the court, this inconsistency could not be reconciled because "[a]n apportionment requires a refinement of the jurors' earlier votes on the liability of the defendant. It fixes not merely the existence or lack of liability, but the degree of liability." *Id.,* 110 *Misc.*2d at 468, 442 *N.Y.S.*2d at 854. Similarly, in *Ferguson v. Northern States Power Co.,* 307 *Minn.* 26, 239 *N.W.*2d 190 (1976), two jurors who dissented from a finding that the defendant was causally negligent participated in the apportionment of negligence question. The court held that these jurors should have been disqualified from voting since questions regarding causal negligence and apportionment were "integrally related in determining ultimate liability." 307 *Minn.* at 37, 239 *N.W.*2d at 196.

The underlying premise of such cases is that jurors are incapable of or should not be expected to undertake a "refinement" of an earlier determination if this is inconsistent with a subsequent determination with which it is "integrally related." Other courts, however, have concluded that such intellectual incapacity need not and should not be ascribed to jurors.

In *Juarez v. Superior Court of Los Angeles County,* 31 *Cal.*3d 759, 647 *P.*2d 128, 183 *Cal.Rptr.* 852 (1982), the trial court had declared a mistrial because the same nine jurors had not agreed on both the existence of liability and the apportionment of damages according to fault in a special verdict. The California Supreme Court ordered the lower court to vacate the

mistrial and enter a judgment according to the special verdict. Writing for the court, Justice Mosk reasoned that to deny jurors who dissent on the question of liability the ability to participate in an important remaining issue "would deny all parties the right to a jury of 12 persons deliberating on all issues," and that a contrary rule would result in administrative waste. 31 *Cal.*3d at 768, 647 *P.*2d at 133, 183 *Cal.Rptr.* at 857. The dissent criticized the court for fashioning a different rule for special verdicts in contrast to uninterrupted case law that required identical jurors to agree on the elements in a general verdict. According to the dissent, a juror who decides that a party is not liable could not "conscientiously" apportion financial responsibility to that party. *Id.* at 772, 647 *P.*2d at 136, 183 *Cal.Rptr.* at 860.

Similarly, in *Powell v. Norman Lines, Inc.,* 674 *S.W.*2d 191 (Mo.Ct.App.1984), the jury returned two verdict forms, showing that the jurors who signed the verdict form assessing relative fault were not the same jurors who had found both appellants liable. The court stated, "[w]e must trust that once a jury has fully resolved one issue, the jurors will honestly and independently return a verdict on subsequent issues." *Id.* at 199–200. Any other holding, according to the court, would "complicate our system of trial by jury ... cause economic loss ... because of mistrials and would further court congestion and unfairness ..." *Id.* at 199 (citing *Ward, supra,* 107 *N.J.Super.* at 356); *cf. Reed v. Sale Memorial Hosp. and Clinic,* 741 *S.W.*2d 819, 823 (Mo.Ct.App.1987) (although not directly addressing the issue of inconsistent jury verdicts, court found that the question of whether Missouri adopted the *Ward* "any five" approach was unresolved).

These results are not in conflict with *Roland v. Brunswick Corp.,* 215 *N.J.Super.* 240 (App.Div.1987), as argued by plaintiff. There, the jury in a personal injury action was given ten special interrogatories to answer. When the interrogatories were returned, there was an inconsistency between question number seven, which found that plaintiff's negligence was not

a proximate cause of his injuries, and question ten, which found that plaintiff's fault had proximately contributed to his injuries to the extent of five percent. The trial court instructed the jurors to reconsider only question ten and not question seven. On appeal, the Appellate Division found that the court was obligated to reinstruct and resubmit both questions to the jury "to assur[e] consistent answers accurately reflecting the jury's findings." *Id.* at 244 (citations omitted). Accordingly, the Appellate Division reversed the judgment and remanded the matter to the trial court for a new trial or entry of an amended judgment. Thus, *Roland* involved an inconsistency between two unanimously decided interrogatories, generating an inference that either verdict may have inaccurately reflected the jurors' determination. In the present case, however, there was a seeming inconsistency only in one juror's findings. However, that juror had the responsibility of accepting the prior determination of liability before assessing relative fault. Therefore, the apparent inconsistency does not necessarily evidence confusion or mistake. Further, the findings were actually consistent in this case since the majority of jurors found that the plaintiff was negligent and thereafter apportioned fifty-one percent of liability to her. *Roland* is therefore inapplicable to the plaintiff's case.

In *Juarez,* the court did not address the distinction that plaintiff attempts to draw between inconsistent verdicts of fault and damages and inconsistent verdicts of fault and apportionment-of-fault. However, in *Powell,* the court did deal with jurors who did *not* find fault but then assessed relative fault. As in *Powell,* this Court rejects plaintiff's argument that fault and apportionment-of-fault, unlike fault and damages, represent one issue, not two, because they are "closely related." A conceptual relationship between these two issues shall not render an inconsistency between their resolutions fatal in terms of the validity of the jury's ultimate determination. Verdict inconsistencies even as to related issues are regularly tolerated as incidents of the deliberative process. For example, in *Singer*

*Shop-Rite, Inc. v. Rangel,* 174 *N.J.Super.* 442 (App.Div.), certif. den., 85 *N.J.* 148 (1980), a jury verdict was upheld where the same juror who voted *against* a finding of assault and battery voted *for* a finding of punitive damages, two issues unquestionably "related." *See Tiberi v. Petrella,* 60 *N.J.Super.* 513, 518 (App.Div.1960) (prerequisite to imposition of punitive damages is a finding of a "deliberate purpose to override the rights of another and a wanton disregard of his physical safety."); *see also Resch v. Volkswagen of America, Inc.,* 36 *Cal.*3d 676, 685 *P.*2d 1178, 205 *Cal.Rptr.* 827 (1984) (juror who disagreed on finding of negligence may vote on issue of proximate causation); *Tillman v. Thomas, supra,* 99 *Idaho* 569, 585 *P.*2d 1280 (juror's determination that employer was liable under *respondeat superior* not invalid because same juror did not determine employee liable even though employee liability is a predicate to employer liability).

■ Plaintiff's analysis, which treats two questions as "one issue," obscures the fact that each question involves some factual elements that are different and can be determined separately. Further, it fails to acknowledge the capacity of jurors to engage in fair and honest deliberations notwithstanding inconsistent positions even as to facts that are identical. Thus, in this case, one question entails an inquiry into the existence of fault; the other requires an analysis of the degree of fault. In the liability/damage determination, a juror disbelieving that liability is established is deemed capable of accepting as fact that liability is established and then determining damages. The same capability should be imputed to a juror, despite an initial view to the contrary, to accept as fact that fault is established, and then determine independently the degree of liability by apportioning such fault. As the Oklahoma Supreme Court in *Fields* stated:

> Our system of justice revolves around our reliance on the wisdom of juries. Surely our confidence in their judgment must include a belief that, although a juror concludes in a first trial that a defendant is not responsible for the plaintiff's injuries, he is still capable of accepting as fact in a second trial that

the plaintiff was injured, and then determining independently to what extent he was damaged. [555 *P.*2d at 55–56.]

Plaintiff also stresses that the problem of inconsistencies between special verdicts is not unlike the problem posed by an inconsistency between a general verdict and a special verdict, and should not be encouraged or approved. In *Schabe, supra,* the court in discussing the difficulty of applying the any-five concept to a general verdict observed that "the historic basis for treating general verdicts and special verdicts differently still retains significance." *Id.,* 103 *A.D.*2d at 424, 480 *N.Y.S.*2d at 333–34. Special verdicts, the court explained, were created as a means of protecting jurors from prosecution for attainder of false verdict and were therefore "a device for returning the facts only—leaving the legal consequences to the judge." *Id.* at 425, 480 *N.Y.S.*2d at 334 (citation omitted). Even today, the focus of a special verdict is the "resolution of specific factual questions," *id.* at 425, 480 *N.Y.S.*2d at 334, whereas the focus of a general verdict is to determine the outcome of the case. The court further noted that a special verdict can be easily separated into distinct parts, but a general verdict, as the *"residuum* of all matters, however numerous, whether of law or fact ... [is] incapable of being broken up into its constituent parts." *Id.* at 425, 480 *N.Y.S.*2d at 334 (quoting Sunderland, "Verdicts, General and Special," 29 *Yale L.J.* 253, 258 (1920)). We thus agree that a general verdict that appears inconsistent with special verdicts is distinguishable from general verdicts resting on inconsistent special verdicts. In civil trials general verdicts that are inconsistent with special verdicts are considered evidence of jury confusion or mistake. *See Pappos v. Santiago,* 66 *N.J.* 140 (1974); *Brendel v. Public Serv. Elec. and Gas Co.,* 28 *N.J.Super.* 500, 507 (App.Div.1953); *see also Navarro v. George Koch & Sons,* 211 *N.J.Super.* 558, 571 (App.Div.), certif. den., 107 *N.J.* 48 (1986) (in scrutinizing jury charges in civil trials, the ultimate issue is whether the jury was confused or misled). We are not, however, in this case confronted with such an inconsistency.

■ The key concern in scrutinizing jury results is preserving the integrity of jury deliberations and encouraging the "deliberative process" because the process itself is the vehicle for the collective mutual decision-making that reflects community views. *See State v. Corsaro,* 107 *N.J.* 339, 349 (1987). It is only under exceptional circumstances that jurors are not trusted to act conscientiously. *State v. Ragland,* 105 *N.J.* 189, 195 (1986). The jury is deemed capable of following a curative instruction to ignore prejudicial matter. *State v. Winter,* 96 *N.J.* 640, 647 (1984). In no less than capital cases we have endorsed the same principle concerning the capacity and integrity of juries. *See, e.g., State v. Koedatich,* 112 *N.J.* 225 (1988); *State v. Ramseur,* 106 *N.J.* 123 (1987). We have similar high expectations of jurors who are instructed to begin deliberations anew after they have already engaged in deliberations, *e.g., State v. Trent,* 79 *N.J.* 251 (1979); *State v. Miller,* 76 *N.J.* 392 (1978); or to disregard prior determinations in readdressing issues, *e.g., State v. Ingenito,* 87 *N.J.* 204 (1981).

■ The question in all of these situations is whether the jurors are capable of engaging in such deliberations conscientiously, fairly, and openly. Although it may be difficult for jurors who did not find a party at fault to then conscientiously and fairly apportion a percentage of fault, we see this mental task as no greater than or different from that expected of jurors in many other settings. We presume that each juror will be conscientious and fair in deliberating on the apportionment of fault whether he or she agreed with the prior verdict on liability or not.

■ What is, however, critical in this approach is that an outvoted juror will honestly and fairly examine the remaining issues. We therefore consider it essential that jurors be properly instructed. They must be told clearly and emphatically that each juror must deliberate fully and fairly on each question or special verdict, that inconsistency on the determination of one question or verdict does not disqualify a juror from

deliberating on remaining questions, and that any juror must, in deliberating on any remaining question or verdict, accept the position of the majority on any previous question or verdict and do so honestly, fairly, and conscientiously.

In this case, as earlier noted, the trial court did give the jury a special instruction authorizing each juror to vote on each question regardless of how he or she voted on a previous question. It specifically advised the jury "you can vote inconsistently.... [d]on't think that ... you must vote consistently." However, this instruction was inadequate under the circumstances. The charge failed to convey the jurors' responsibilities with sufficient clarity. A trial court in presenting special interrogatories or eliciting special verdicts from a jury must specifically instruct the jury that each juror must determine and decide each question, that a juror is not required to vote consistently on each question and may vote inconsistently on questions, that each juror must consider each question with an open mind, that each juror must determine each question fairly and impartially based on the evidence, and that it is proper to accept the determination of at least five of the jurors on any question when that determination is relevant or essential in deciding another question. The charge in this case was not sufficiently specific. We can have no confidence therefore that the juror who voted inconsistently did so in a manner that comported with this responsibility rather than reaching a determination based on mistake, confusion, or bias. Consequently, the final verdict ultimately returned by the jury cannot be sustained.

## II.

In sum, the strong public policies favoring application of the *Ward* approach surmount any countervailing considerations behind previous unanimity requirements. The crucial consideration is preserving the integrity of the deliberative process by ensuring that each juror understands clearly his or her respon-

sibility to participate fully in determining each issue. This rule grows out of the public policy considerations behind the legislative adoption of non-unanimous jury verdicts, namely, to promote judicial efficiency and economy while maintaining a structure for full participation in collective decision-making. *Ward v. Weekes, supra,* 107 *N.J.Super.* at 353.

The judgment below is reversed and the matter remanded.

CLIFFORD, J., dissenting.

You know how, when times are slow and good material is hard to come by, some third-rate stand-up comics and other undistinguished commentators resort to crummy "jokes" the butt of which are lawyers and judges? The punch line, usually delivered with feigned exasperation and obvious derision, runs along the lines of "Only a lawyer (or judge) could think like that!" Take warning: the conceptual incoherence of the theory underlying today's decision will fuel that kind of stuff.

Now just think about what happened here. Juror Number Two decided that neither plaintiff nor defendant was negligent. Then, despite the fact that she had already determined that there was no liability, Juror Number Two went on to apportion the liability that as far as she was concerned did not exist. Why she voted on that issue we cannot know, except that the trial court told the jurors they could "vote inconsistently." Although doubtless suffering from a certain schizophrenia, a sense of never-never land, she did as she was told.

The Court sanctions that process, calmly reassuring us that the mental gyrations called for in that task are "no greater than or different from that expected of jurors in many other settings," *ante* at 632, including the liability/damage determination: "[A] juror disbelieving that liability is established is deemed capable of accepting as fact that liability is established and then determining damages." *Ante* at 630. Well, the latter observation is accurate, of course, because unlike the "liability-apportionment of liability" issues, the "liability-dam-

ages" issues are entirely separate, distinct, unconnected, unrelated, independent. But on the issue presented here—the liability/apportionment question—I would side with those courts, see *ante* at 627, that have disapproved of the irreconcilable inconsistency explicit in a juror's addressing apportionment after having conscientiously concluded that there is nothing to apportion.

In this case, however, the verdict can stand. Juror Number Two's result was a "no cause for action" because of the absence of any negligence, and four other jurors likewise voted for a "no cause," albeit on a different theory: plaintiff's comparative fault was greater than defendant's. A five-sixths verdict of "no cause" need not be achieved on precisely the same theory of non-liability as long as the jurors get to the same place. And any inadequacy in the trial court's charge, as found by this Court, *ante* at 632–633, on a juror's right to vote inconsistently is of no moment as I view the case: no instruction on "inconsistency" should have been given here, but the fact that Juror Number Two followed such an instruction after having concluded that there was no liability could inure only to plaintiff's benefit.

Although I disagree entirely with the reasoning of the court below, I would nevertheless affirm.

*For reversal and remand*—Chief Justice WILENTZ and Justices POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—Justice CLIFFORD—1.